2497

The STATE, Respondent v. Danny Lee CAMPEN, Appellant.

(469 S.E. (2d) 619)

Court of Appeals

*Assistant Appellate Defender Robert M. Dudek,* of the *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh* and *Assistant Deputy Attorney General Salley W. Elliott,* Columbia; and *Solicitor Randolph Murdaugh, III,* Hampton, *for respondent.*

Heard Mar. 5, 1996.

Decided Apr. 15, 1996.

CURETON, Judge:

Danny Lee Campen was indicted for assault with intent to kill, taking of hostages, and kidnapping. The kidnapping charges were dismissed and Campen was convicted for assault with intent to kill and taking of hostages. Campen raises two issues on appeal. First, he argues the trial court erred in allowing him to represent himself at trial without first warn-

ing him of the hazards of self-representation. Secondly, he argues the trial court erred in charging the jury only that it could return verdicts of guilty, not guilty or not guilty by reason of insanity; the error being the court failed to inform the jury it could find him guilty but mentally ill. Based on the latter issue, we reverse Campen's conviction.

On April 21, 1993, Campen, an inmate at Allendale Correctional Institution, entered the office of Mary Moody, the deputy warden's administrative assistant.[1] Once inside the office, Campen displayed a "shank") a homemade knife resembling an ice pick) to Moody, told her he did not intend to hurt her, and ordered her to lock the office door. Before Moody did as Camped asked, another inmate entered the office and attempted to assist Moody. While Campen struggled with the other inmate, Moody telephoned the deputy warden for assistance. The deputy warden and other personnel arrived immediately thereafter and eventually subdued Campen. Both the deputy warden and the inmate lending assistance sustained injuries, including knife wounds, during the struggle.

## I. Self-Representation

Prior to trial, Campen moved to be allowed to represent himself with appointed standby counsel. He explained to the trial judge that he had been studying the case for seventeen months and felt self-representation would be the better course. The State took no position on the motion. The trial court granted the motion after advising Campen he would not be allowed to disrupt the proceedings.

On appeal, Campen argues the trial court erred in proceeding to trial without first warning him of the dangers and disadvantages of self-representation. We find no reversible error.

To establish a valid waiver of the right to counsel, the accused must be made award of the right to counsel and of the dangers of self-representation. *Bridwell v. State*, 306 S.C. 518, 413 S.E. (2d) 30 (1992). A specific inquiry by the trial judge expressly addressing the disadvantages of a *pro se* defense is preferred; however, the paramount consideration not the trial judge's advice to the accused but the ac-

---

[1] Campen was serving a life sentence and twenty-five years from a 1991 conviction for murder and armed robbery.

cused's understanding. *Id.* Thus, in the absence of an inquiry by the judge, this court will look to the record to determine if the accused had sufficient background to understand the disadvantages of self-representation or was apprised of his rights by some other source. *Id; State v. Cash,* 309 S.C. 40, 419 S.E. (2d) 811 (Ct. App. 1992) (delineating factors relevant to ascertaining the sufficiency of accused's background).

At the time of trial, Campen was serving a life sentence plus twenty-five years for murder and armed robbery and was therefore intimately familiar with criminal proceedings and the criminal justice system. The record reflects Campen had ample time to consider the disadvantages of proceeding *pro se* and that he in fact made an informed, strategic decision to waive his right to counsel. In arguing he should be allowed to represent himself, Campen informed the court he had been studying the case for seventeen months prior to trial and specifically requested standby counsel to advise him regarding "courtroom canons and courtroom procedures." Clearly, Campen understood and appreciated his lack of expertise on finer points of law and took definitive steps to negate this impediment. Campen's standby counsel sat with him throughout the trial, made motions on his behalf, and advised him on several occasions. Moreover, Campen personally conducted extensive direct and cross-examinations of witnesses, made numerous motions, and was allowed unfettered access to his standby counsel during all phases of the trial. Under these facts and circumstances and in light of the applicable standard, we find no error in the trial court's determination that Campen knowingly and intelligently waived his right to counsel.

## II. Verdict Forms

Following the prosecution's case, Campen called Dr. Harold Morgan, a psychiatrist, as a defense witness. Campen questioned Dr. Morgan about his evaluation of him, the history given him by Campen, and about various issues such as attention deficit disorder, anxiety disorder, depression, and antidepressant medication. Dr. Morgan testified Campen had a history of depression, was prescribed antidepressant medication in September 1991, and his dosage was later increased to twice the original dosage. According to Dr. Morgan, Campen was receiving "adequate" doses of the anti-

depressant medication "at least during the period of April until July 1992." Dr. Morgan stated the medication should have afforded Campen, among other things, increased behavior control. Dr. Morgan also testified Campen was diagnosed with adult attention deficit disorder in July 1992 and opined that victims of the disorder suffer very poor impulse control, mood abnormalities, low stress tolerance and hyperactivity. Campen was also diagnosed with anxiety disorder, symptoms of which include feelings of anxiousness, heavy perspiration, rapid pulse and stress avoidance. Dr. Morgan opined that "prisons are extremely stressful" and being in a prison environment would make depression, adult attention deficit disorder, and anxiety disorder "more uncomfortable and difficult to treat." Nevertheless, on cross-examination, Dr. Morgan stated he concluded Campen had the capacity and ability to differentiate right from wrong in April of 1993 and had the capacity to conform his conduct accordingly.

Campen testified he has had mental difficulties most of his life and had been feeling paranoid while at Allendale. He claimed he had been taken off his medication and felt he could not get anyone's attention so he could get help. Campen claimed his paranoia became so consuming that he missed meals for fear of being attacked in the prison cafeteria and he "booby trapped" his cell so that he would be awakened by anyone trying to enter while he slept. Campen also testified his mental state on April 21, 1993 was such that he was paranoid, confused and had no control over his actions. He claimed he needed someone to talk to about his problems and needed further psychological help.

Campen's standby counsel asked the court to submit verdicts of guilty, not guilt, not guilty by reason of insanity, and guilty but mentally ill. The court stated it would charge insanity. The court charged the jury with the law of insanity and submitted verdicts of guilty, not guilty, and not guilty by reason of insanity. Campen did not object to the charge except to ask the court to advise the jury the kidnapping indictment had been dismissed. The jury found Camped guilty of assault with intent to kill and taking hostages.

On appeal, Campen argues the trial court erred in failing to include guilty but mentally ill in its charge to the jury. We agree.

S.C. Code Ann. § 17-24-30 (Supp. 1995) provides:

> In a prosecution for a crime when the affirmative defense of insanity is raised sufficiently by the defendant, or when sufficient evidence of a mental decease or defect of the defendant is admitted into evidence, the trier of fact shall find under the applicable law, and the verdict must so state, whether the defendant is: (1) guilty; (2) not guilty; (3) not guilty by reason of insanity; or (4) guilty but mentally ill.[2]

In *State v. Rimert*, 415 S.C. 527, 446 S.E. (2d) 400 (1994), our Supreme Court held that once a defendant has raised the issue of sanity, § 17-24-30 requires the submission of all four verdict forms and a defendant may not waive a guilty but mentally ill verdict form.

The State takes the position that the trial court did not err in failing to charge the jury it could find Campen guilty but mentally ill because Campen failed to present any evidence putting his sanity at issue. In essence, the State contends the provisions of § 17-24-30 were never invoked because, based on the lack of evidence tending to show Campen may be or may have been insane, Campen was never entitled to an insanity charge. We think, however, that Campen's own testimony, together with that of Dr. Morgan, sufficiently raised the issue of Campen's sanity so as to trigger application of § 17-24-30. The fact that Dr. Morgan ultimately concluded Campen had the capacity and ability to differentiate right from wrong at the time of the incident and had the capacity to conform his conduct accordingly is not dispositive, inasmuch as the jury could have elected to disregard his opinion as to Campen's mental state in April of 1993. *State v. Milian-Hernandez*, 287 S.C. 183, 336 S.E. (2d) 476 (1985) (a jury may properly disregard expert testimony); *State v. Smith*, 304 S.C. 129, 403 S.E. (2d) 162 (Ct. App. 1991) (a jury is free to believe one portion of a witnesses testimony and disbelieve another).

---

[2] Pursuant to S.C. Code Ann. § 17-24-20 (Supp. 1995):

A defendant is guilty but mentally ill if, at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong or to recognize his act as being wrong as defined in Section 17-24-10(A), but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law.

Because the provisions of § 17-24-30 are mandatory and may not be waived, the court was not free to omit guilty but mentally ill from its submission of verdict forms to the jury. As such, the court's failure to submit the proper verdict form constitutes reversible error.

Reversed.

HOWELL, C.J., and GOOLSBY, J., concur.