■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DORIS E. CIERVO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Agresta, J.), rendered August 6, 1984, convicting her of manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and as a matter of discretion in the interest of justice, new trial ordered on the second count of the indictment charging the defendant with criminal possession of a weapon in the second degree, and the first count of the indictment dismissed, without prejudice to the People to re-present any appropriate charges to another Grand Jury *(People v Beslanovics,* 57 NY2d 726).

The trial court's failure to "respond meaningfully" to the jury's request for supplemental instructions *(see, People v Malloy,* 55 NY2d 296, 298, *cert denied* 459 US 847), compounded by (1) the absence of specific limiting instructions with respect to evidence adduced, both upon cross-examination

of the defendant and rebuttal, as to the defendant's prior bad or immoral acts, and (2) the prosecutrix's improper comments upon summation, created a "significant probability * * * that the jury would have acquitted the defendant had it not been for the error[s]" (see, People v Crimmins, 36 NY2d 230, 242).

The defendant was charged with murder in the second degree and criminal possession of a weapon in the second degree for the fatal shooting of her husband. She asserted a defense of justification, alleging that she acted in the defense of herself and her children, as her son was being beaten by the decedent on the morning of the shooting. To support her defense of justification and the reasonableness of her belief that she and her children were in imminent danger of having deadly physical force inflicted upon them (see, Penal Law § 35.15), the defendant called an expert in the field of psychology to testify as to "battered woman's syndrome", of which the expert had extensive knowledge (see, e.g., People v Emick, 103 AD2d 643; People v Powell, 83 AD2d 719, affg 102 Misc 2d 775; State v Kelly, 97 NJ 178, 478 A2d 364). The expert opined that the defendant was a victim of this syndrome, based upon her six meetings with the defendant, discussions with family members and her review of hospital records. She explained that, based upon the decedent's pattern of beatings, the defendant was able to perceive "the danger to be life threatening for her son" and that "it was necessary for her to stop [the decedent] or her life and the life of her child would have been ended". Additional testimony was given by family members and friends as to the repeated and violent beatings.

The court initially instructed the jury that it was to consider whether the People had established the elements of murder in the second degree beyond a reasonable doubt, and that if it so found, it should then consider the defense of justification (see, 1 CJI [NY] 35.15 [2] [a]). It further instructed the jury that if it rejected the defense, it was then to consider whether the defendant had acted under extreme emotional disturbance, and if so, the defendant should be convicted of manslaughter in the first degree, a lesser included offense (see, Penal Law § 125.25 [1] [a]; § 125.20 [2]; 2 CJI [NY] PL 125.25 [1]). In addition, the court charged the jury as to the lesser included offense of manslaughter in the second degree (Penal Law § 125.15 [1]).

While the court's initial charge to the jury was accurate with respect to murder, justification, manslaughter in the first degree (involving extreme emotional disturbance), and manslaughter second degree (involving recklessness), its supple-

mental instructions were not. Three hours after it commenced deliberating, the jury requested the "Judge's explanation of charge one, murder two, manslaughter one and manslaughter two". The court explained the elements of murder in the second degree, but omitted any reference to the justification defense. The defense counsel requested that the court remind the jury of the justification defense, which it did, stating "I also remind you of justification [;] apply that to this case as well". The court again refused to charge justification with respect to manslaughter in the second degree.

The jury returned 1½ hours later with the question "Under what category does justified homicide fall * * * We would like a very clear explanation of the charge of second degree murder and not guilty". The court again instructed the jury as to the elements of the offenses and the defense of justification. This second request reveals the jury's confusion and indicates the inadequacy of the first recharge which omitted an explanation of the justification defense, save the one terse remark that justification applies to this case as well. Three hours later, the jury returned to the courtroom, indicating that it was deadlocked and requesting further instruction as to the justification charge "which explains how the Defendant may have committed a crime but may be considered innocent because the crime was committed as self-defense or in defense of a loved one". The court again reread its original charge on justification with respect to murder in the second degree and the jury indicated its satisfaction with the instructions.

On the next day, the defense counsel moved for a mistrial, asserting that the jury's notes "indicated its confusion because they were confused [as to] whether having found the Defendant guilty do they then go on to manslaughter in the first degree and * * * is self-defense some form of mitigation". The application was denied.

Five hours later, the jury asked whether "the concept of self-defense [could] be considered an act of extreme emotional disturbance", to which the court merely replied "no". A verdict was rendered 1½ hours later.

Under these circumstances, we conclude that the supplemental instructions were inadequate, notwithstanding the correctness of the initial charge. It is evident, as the jury's last question revealed, that the jury did not comprehend the original charge and "remain[ed] perplexed about the elements of the crime or the application of the law to the facts" (People v Malloy, supra, at p 302). The failure of the court to adequately guide the jury as to the defense of justification, a vital

point, may well have affected the outcome of the case *(cf. People v Young,* 65 NY2d 103; *People v Johns,* 122 AD2d 74; *People v Emick,* 103 AD2d 643, 660-661, *supra).*

We further note that the trial court's refusal to charge the jury as to the justification defense with respect to manslaughter in the second degree was erroneous *(see, People v Huntley,* 59 NY2d 868; *People v McManus,* 67 NY2d 541).

Turning to the defendant's other allegations of error, at trial extensive testimony was received, both from the defendant herself on cross-examination, and upon the People's rebuttal, tending to establish that the defendant was a drug user, a neglectful mother, an adulteress, and an inadequate housekeeper. The court permitted the admission of this evidence on the theory of provocation, that is, that the jury was entitled to know whether the defendant's actions provoked her husband into beating her. This was clearly erroneous, especially since the incident in question concerned the beating of the son and not the defendant *(see, People v Filippelli,* 173 NY 509; *People v Pagnotta,* 144 App Div 265).

Nevertheless, the evidence of prior bad acts was to a certain extent probative of the defendant's motive to shoot her husband *(see, People v Molineux,* 168 NY 264), reflected upon her credibility *(see, People v Schwartzman,* 24 NY2d 241), and enabled the People to refute her claim that she was indeed a victim of "battered woman's syndrome". Thus, that evidence was properly admitted *(see, People v Powell,* 83 AD2d 719, *supra).* However, the very real potential for undue prejudice which arises when such evidence is admitted requires that the jury be instructed as to the limited purpose for which it is received *(see, People v Williams,* 50 NY2d 996, 998; *People v Marshall,* 306 NY 223, 226; 1 CJI [NY] 12.20 pp 708-709). Indeed, the prosecutrix's summation was replete with improper references to this evidence, implying that a conviction was warranted based solely upon the defendant's character. In view of the absence of limiting instructions, which should, under the circumstances, have been tailored to this particular case, the prejudice which may have resulted to the defendant cannot be overlooked.

Finally, we strongly disapprove of several of the prosecutrix's remarks during summation, including the characterization of the defense case as "razzle dazzle", "the old three ring circus", a "con", and her comparison of it to "Watergate", and George Orwell's novel "1984". We are unpersuaded by the People's claim that these remarks represent fair comment in

response to the defense counsel's summation *(see, People v Blackman,* 88 AD2d 620).

In light of the foregoing, we need not address the defendant's remaining contentions. Brown, J. P., Niehoff, Rubin and Kunzeman, JJ., concur.