## 1641

The STATE, Respondent v. James David SMITH, Appellant.

(403 S.E. (2d) 162)

Court of Appeals

*Assistant Appellate Defender Joseph L. Savitz, III,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Miller W. Shealy, Jr.,* and *Solicitor Richard A. Harpootlian,* Columbia, *for respondent.*

Heard March 13, 1991; Decided Apr. 1, 1991.

Rehearing Denied Apr. 19, 1991.

SANDERS, Chief Judge:

This is a murder case. Appellant James David Smith argues that the trial judge erred in charging the jury. The State argues that any error is harmless. We reverse and remand.

The defendant went to the S & J Lounge in the company of the Cook brothers, Ronnie and Steve. Unsurprisingly, beer was the beverage of choice. According to the defendant, "there was a lot of drinking going on." Predictably, hostilities

broke out. The Marquis of Queensberry rules were not in effect.[1]

The defendant testified he left the lounge immediately after the Cooks and, when he got outside, he "saw chaos." He estimated three or four people were on Ronnie and at least four were on Steve. "[T]hey were more or less just lynching them," he said.

The defendant further testified that, after trying to get the assailants off the Cooks, he went to his truck and got a pistol, intending to "scare these guys off." He said he was about to fire a shot in the air when someone hit his arm and, simultaneously, the gun went off.

Tragically, one of the people engaged in the melee was shot in the head and killed. It can be inferred that he was on the side adverse to the Cook brothers. The defendant said he shot the victim by accident, but other evidence indicated the shooting was not accidental. A pathologist, called as a witness by the State, testified it was her opinion the gun was touching the victim's head when it was fired.

The trial judge charged the jury on the crimes of murder, manslaughter and involuntary manslaughter, as well as on the defenses of accident and self-defense. Among other things, he charged: "[Voluntary] manslaughter is the killing of a human being in sudden heat and passion upon a sufficient legal provocation." He further charged that "a person who intervenes to protect a relative or another, a friend, assumes the rights and limitations of the person he acts to protect."

Shortly after the jury retired to deliberate, it returned to the courtroom with a question. The defendant presents several issues on appeal, but the dispositive issue is whether the trial judge erred in answering that question.

The question was well-framed. The jury asked: "With voluntary manslaughter, to have legal provocation, does a person need to be struck himself, or is it enough to see someone else being assaulted for there to be enough cause to act?"[2]

The trial judge responded by simply restating his previous charge on voluntary manslaughter. He gave two examples

---

[1] The rules of boxing were published under the sponsorship of John Sholto Douglas (1844-1900); the 9th Marquis of Queensberry. *Webster's Sports Dictionary* 269 (1976).

[2] The question is corrected as to spelling and punctuation.

of provocation. Both were examples of a person being provoked by an assault upon himself, not someone else. He did not say whether sufficient provocation can arise out of witnessing an attack on another person.

The jury again retired and, in due course, rendered a verdict convicting the defendant of murder.

The error of the trial judge is manifest and twofold. In the first place, he did not answer the question asked. Moreover, his response was misleading. The examples he gave may very well have caused the jury to think that sufficient provocation could only arise out of an assault on the defendant himself. This is not the law. *See* 40 C.J.S. *Homicide* § 48 at 913 (1944) ("[V]iolence to a relative or friend in the presence of the accused is adequate provocation. . . ."). Indeed, an old South Carolina case indicates that an attack on the defendant's horse can constitute sufficient provocation. *See State v. Gallman*, 79 S.C. 229, 240, 60 S.E. 682, 687 (1908) (quoting with approval the charge that provocation can arise out of physical aggression upon another person and further: "If you had a valuable horse, or a horse, whether it was valuable or not, and I walk up to you in your presence and kill your horse without rhyme or reason, and you strike me dead, the law says that would be manslaughter, now if you did it because of passions aroused by that act.").

The State argues that any error by the trial judge is harmless because, according to the defendant's version of what happened, he shot the victim accidentally, "not in self-defense or under circumstances that would justify a manslaughter charge." We reject this argument for two reasons. A jury is free to believe a portion of the testimony of a witness and disbelieve another portion. *Smith v. Safeco Life Ins. Co.*, — S.C. —, 399 S.E. (2d) 427 (Ct. App. 1990). Thus, the jury could have believed the defendant when he said he was coming to the defense of the Cooks but disbelieved him when he said he shot the victim by accident. *See State v. McCaskill*, 300 S.C. 256, 258, 387 S.E. (2d) 268, 269 (1990) (Where a defendant claims he armed himself in self-defense and, at the same time, claims he shot the victim accidentally, this combination of events can "place the shooting in the context of self-defense."). Moreover, the State overlooks the fact that, at the time the jury asked the question, a charge on manslaughter had already been

given. Quite obviously, the decision as to whether to convict the defendant of manslaughter, rather than murder, was being actively considered by the jury. This is clearly indicated by the question itself. Under the circumstances, the judge should have answered the question the jury asked and answered it correctly.

The State further argues that any error is harmless because "the jury obviously found that [the defendant] killed with malice afore-thought." As the State correctly points out: "Malice afore-thought is an essential element of murder, and if present, precludes the finding that the defendant is guilty of voluntary manslaughter or [acted in] self-defense." We also reject this argument. Had the jury received an answer to its question, it could have decided that the defendant did not act with malice but upon provocation sufficient to justify reducing murder to manslaughter.

Of course, we do not mean to imply that the trial judge intentionally failed to answer the question asked by the jury or that he intended to mislead the jury by his response. To the contrary, it appears that he made a conscientious effort to fairly and fully respond. His error resulted from how he went about responding. It is not always sufficient for a judge to simply open a charge book and read a generic statement of the law to a jury, no matter how correct that statement may be in the abstract. This is particularly true where, as here, the judge is called upon to answer a well-framed question following the initial charge. Quite often, the judge must tailor, mold and even sculpt the law in fashioning an answer to fit the question. In this respect, the judge must be an artist, not a mere technician. *See State v. Fuller*, 297 S.C. 440, 443, 377 S.E. (2d) 328, 330 (1989) ("In charging self-defense, we instruct the trial court to consider the facts and circumstances of the case at bar in order to fashion an appropriate charge.").

Reversed and remanded.

BELL and GOOLSBY, JJ., concur.