648 S.E.2d 354

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Wade C. DAVIS, Defendant Below, Appellant.**

No. 33191.

Supreme Court of Appeals of West Virginia.

Submitted March 13, 2007.

Decided April 5, 2007.

Dissenting Opinion of Justice Maynard June 8, 2007.

Dissenting Opinion of Justice Benjamin July 25, 2007.

Crystal L. Walden, Gregory L. Ayers, Office of the Public Defender, Charleston, for Appellant.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

Wade C. Davis appeals from an order of the Circuit Court of Kanawha County sentencing him to a term of ten years imprisonment after a jury convicted him of second degree murder. Here, Mr. Davis argues that the circuit court committed reversible error by failing to instruct the jury that "intent" is an element of second degree murder. After a careful review of the briefs and record, we reverse and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Around 11:45 p.m. on March 17, 2003, Mr. Davis pulled into a Go–Mart parking lot in Sissonville, West Virginia, to purchase gas for his vehicle. Mr. Davis had two companions with him, Todd Robins and Matt Hensley. Mr. Davis attempted to put gas in his vehicle but the pump was not turned on. Mr. Davis yelled to Mr. Hensley as he walked toward the store, "Tell them to turn the f—ing pumps on, please." At the time that Mr. Davis yelled, three other patrons were present, Eddie Lattea, his son Michael Lattea, and Donald Shaffer. The events that occurred after Mr. Davis yelled to Mr. Hensley were contested at trial.[1]

Either Eddie or Michael yelled out to Mr. Davis that "You have to pay for it first you dumb mother f—."[2] Heated words were thereafter exchanged between Mr. Davis and Michael or Eddie. According to the testimony of Mr. Davis, he was attacked by Eddie, Michael and Donald. Mr. Davis procured a knife in an attempt to defend himself. During the altercation, Mr. Davis stabbed Eddie once in the back. Mr. Davis also stabbed Michael twice in the chest and twice in the head. Michael died as a result of the wounds.

Mr. Davis was subsequently indicted for murder in the first degree and malicious wounding. The trial began on December 6, 2004, and was conducted before a jury. Mr. Davis testified during the trial and explained his actions during the altercation as being in self-defense. He further testified that the killing was not intentional. During jury deliberations the jury asked the court, *on three separate occasions,* to respond to a question. The last note sent to the trial court asked the court to verify (1) whether second degree murder was with malice and unlawful, but without intent and (2) whether voluntary manslaughter was without malice, but with intent.[3] The circuit court responded to the question by reading to the jury its previous instructions on the elements of second de-

---

**1.** As a result of the facts being hotly contested on every issue, and the necessity of a new trial, our review of the facts will be in summary fashion.

**2.** Mr. Davis testified that Michael made the statement. However, Eddie testified that he had made the statement.

**3.** The other two questions posed by the jury are not at issue in this appeal.

gree murder and voluntary manslaughter. Thereafter, the jury returned with a verdict of guilty of second degree murder and not guilty of malicious wounding. Mr. Davis filed a post-trial motion seeking an acquittal or a new trial on the grounds that the court failed to properly instruct the jury that "intent" was an element of second degree murder. The motion was denied without a hearing. This appeal followed.

## II.

## STANDARD OF REVIEW

The only substantive issue presented in this appeal is whether the trial court properly responded to the jury's question on the difference between second degree murder and voluntary manslaughter.[4] In *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we stated that in addressing the issue of a trial court's instruction to the jury, "[t]he basis of the objection determines the appropriate standard of review." *Guthrie*, 194 W.Va. at 671, 461 S.E.2d at 177. It was said in *Guthrie* that "if an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise de novo review." *Id.* On the other hand, a "trial court has discretion in determining how best to respond to a jury question. We will review any such response for an abuse of discretion." *People v. Sanders*, 368 Ill.App.3d 533, 306 Ill.Dec. 549, 857 N.E.2d 948, 952 (2006).

## III.

## ARGUMENT

Mr. Davis did not object to the manner in which the trial court responded to the jury's last question until after the jury had returned its verdict. The State contends that

---

4. We have construed Mr. Davis' assignment of error in two ways. First, he appears to contend that the trial court gave improper instructions on second degree murder in the initial charge to the jury. Second, he contends that in the trial court's response to the jury's last question, the court failed to inform the jury that intent was an element of second degree murder. We have reviewed the initial charge and find that those instructions properly outlined the law with respect to the elements of each offense of which

because there was no timely objection, the issue was waived. This Court has held that "where a party does not make a clear, specific objection at trial to the charge that he challenges as erroneous, he forfeits his right to appeal unless the issue is so fundamental and prejudicial as to constitute 'plain error.' " *Guthrie*, 194 W.Va. at 671 n. 13, 461 S.E.2d at 177 n. 13. Rule 30 of the West Virginia Rules of Criminal Procedure provides that "any appellate court may, in the interest of justice, notice plain error in the giving ... [of] an instruction, whether or not it has been made the subject of objection." *See* W. Va. R.Crim. P. 52 (defining harmless error and plain error). Thus, we have noted that, "[a]s a general proposition, this Court has discretionary authority to consider the legality and sufficiency of the trial court's charge under the plain error doctrine." *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995) (citations omitted).[5]

Mr. Davis argues that the issue raised by him should be addressed by this Court under the plain error doctrine. We agree. *See State v. Barker*, 176 W.Va. 553, 558, 346 S.E.2d 344, 349 (1986) ("Failure to afford a criminal defendant the fundamental right to have the jury instructed on all essential elements of the offense charged has been recognized as plain error."). *See also Smith v. United States*, 549 A.2d 1119, 1123 (D.C.Ct. App.1988) ("This ambiguous [supplemental] instruction coupled with the jury verdict returned shortly thereafter makes it clear to us that the conviction ... is infected with plain error on a constitutional issue."); *Commonwealth v. Johnson*, 435 Mass. 113, 754 N.E.2d 685, 692 (2001) ("Objections to these errors in the instructions on malice were not properly preserved.... Therefore, our review is limited to whether the error created a substantial likelihood of a miscarriage of

---

Mr. Davis could have been convicted. We reject Mr. Davis' argument regarding the initial charge. It is Mr. Davis' second contention that has merit, and therefore, it will be fully examined.

5. *Miller* made clear that "in West Virginia criminal cases[,] the sole bases for attacking an unobjected to jury charge are plain error and/or ineffective assistance of counsel." *Miller*, 194 W.Va. at 17 n. 23, 459 S.E.2d at 128 n. 23.

justice. We conclude that the error did create a substantial likelihood of a miscarriage of justice."); *State v. Harmon*, 104 N.J. 189, 516 A.2d 1047, 1060 (1986) ("It must be determined, then, whether the [supplemental] charge constituted plain error since there was no objection interposed by defendant to the recitation of these charges in this case."); *People v. Carnegie*, 74 A.D.2d 651, 425 N.Y.S.2d 39, 40 (1980) ("Although the defendant's counsel did not object [to the supplemental instruction], we think that in the context of this case, the interest of justice requires that the judgment be reversed and a new trial ordered.").

■ In Syllabus point 7 of *Miller* we set out the elements of the plain error doctrine as follows:

> To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

Syl. pt. 7, *Miller.* 194 W.Va. 3, 459 S.E.2d 114. We will address each element of the plain error doctrine separately.

**1. There was an error.** The first issue we must address is whether or not an error occurred in the trial court's response to the last question submitted by the jury. The last note sent to the trial court asked for clarification as follows:

> Can you please verify the following: Is 2nd degree with malice and unlawful *without intent* and voluntary manslaughter without malice and *with intent* in the heat of passion. Please verify the with and without intent.

(Emphasis in original). The trial court responded to the jury's question by calling the jury back into the courtroom and reading the following instructions on second degree murder and voluntary manslaughter:

Before Wade C. Davis can be found guilty of the offense of murder in the second degree ... the State must overcome his presumption of innocence and prove to your satisfaction, beyond a reasonable doubt, that:

> Wade C. Davis ... did unlawfully and maliciously, but without deliberation or premeditation, kill Michael Allen Lattea.
>
> . . . .
>
> Voluntary manslaughter is a sudden intentional killing upon gross provocation and in the heat of passion.
>
> Voluntary manslaughter is committed when any person intentionally and unlawfully kills another person without malice but under excitement and heat of passion.

Before Wade C. Davis can be convicted of voluntary manslaughter ... the State of West Virginia must overcome the presumption that he is innocent and prove, beyond a reasonable doubt, that:

> Wade C. Davis ... did intentionally and unlawfully, without malice, deliberation or premeditation, but under sudden excitement and heat of passion, kill Michael Allen Lattea.

■ Mr. Davis contends that the instruction on second degree murder is inaccurate because it omitted the element of intent. We disagree. The instruction is correct insofar as our case law has indicated that the terms malice and intent may be used interchangeably.[6] That is, an instruction that properly defines malice will supply information regarding intent. *See People v. Goecke*, 457 Mich. 442, 579 N.W.2d 868, 878 (1998) ("Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."). In this case, the trial court's definition of malice in its initial

---

**6.** On this point,

> [W]e discussed the concept of malice in *State v. Hatfield*, 169 W.Va. 191, 198, 286 S.E.2d 402, 407 (1982), and stated that it " 'is often used as a substitute for specific intent [to] kill or an intentional killing. We then concluded in *Hatfield*: 'It is clear, however, that the intent to kill or malice is a required element of both

> first and second degree murder but the distinguishing feature for first degree murder is the existence of premeditation and deliberation."
> 169 W.Va. at 198, 286 S.E.2d at 407–08.

*State v. Jenkins*, 191 W.Va. 87, 92, 443 S.E.2d 244, 249 (1994). (internal quotations and citation omitted) (footnotes omitted).

charge properly addressed the issue of intent for first degree murder and second degree murder. *See* Syl. pt. 6, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976) ("When instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing a jury verdict.").

Even though the trial court's initial charge to the jury properly defined malice so as to include the requirement of showing an intentional killing, the reply to the jury's last inquiry was nonresponsive to the jury's question and was misleading.[7] It has been observed that "[w]hen the jury requests more instructions upon a particular phase of the case, the trial court is under a duty to instruct them in a plain, clear manner so as to enlighten rather than confuse them." *Smith v. State,* 265 Ga.App. 756, 596 S.E.2d 13, 15 (2004). *See also People v. Sanders,* 368 Ill. App.3d 533, 306 Ill.Dec. 549, 857 N.E.2d 948, 952 (2006) ("In responding to a jury question, the trial court must do so with specificity and accuracy."). Moreover, "[i]t is not error to recharge only on the specific question so long as the recharge taken alone does not leave an erroneous impression in the minds of the jury." *Davis v. State,* 278 Ga.App. 628, 629 S.E.2d 537, 539 (2006). However, "[t]he ... giving of a response that provides no answer to the particular question of law posed [by the jury] has been held to be prejudicial error." *People v. Tomes,* 284 Ill.App.3d 514, 219 Ill.Dec. 781, 672 N.E.2d 289 (1996). *See also People v. Curet,* 256 A.D.2d 1017, 683 N.Y.S.2d 602, 603 (1998) ("[A] simple rereading of a charge may, in itself, constitute reversible error in that the jurors may have been left without adequate guidance.").

It is quite clear from the jury's question that they did not understand the trial court's initial charge, which defined malice as including the element of intent. That is, the jury's question clearly indicates that they failed to understand that malice was previously defined as including intent, for purposes of second degree murder. *See Brown v. State,* 610 So.2d 579, 581 (Fla.Dist.Ct.App.1992) ("We may assume that the jurors could not adequately remember the definitions of manslaughter and second-degree murder, since they requested reinstruction."). The trial court's re-reading of its instructions on second degree murder and voluntary manslaughter did not clarify the matter. In fact, the trial court's response supported the jury's erroneous belief that a showing of intent was necessary for voluntary manslaughter, but not for second degree murder. *See State v. Wyatt,* 198 W.Va. 530, 539–40, 482 S.E.2d 147, 156–57 (1996) ("[R]e-reading of a portion of instructions 'is usually not error', but error may arise where the portion read omits a related portion of the charge which explains or expands upon the re-read portion."); *State v. Pannell,* 175 W.Va. 35, 39, 330 S.E.2d 844, 848 (1985) ("[W]e can envision a situation where the trial court's selective re-reading of instructions would unfairly prejudice the jury."). "Under these circumstances, we conclude that the supplemental instructions were [error], notwithstanding the correctness of the initial charge. It is evident, as the jury's last question revealed, that the jury did not comprehend the original charge and remain[ed] perplexed about the elements of the crime[.]" *People v. Ciervo,* 123 A.D.2d 393, 506 N.Y.S.2d 462, 464 (1986) (internal quotations and citations omitted). *See also People v. Derr,* 346 Ill.App.3d 823, 282 Ill.Dec. 262, 806 N.E.2d 237, 244 (2004) ("The failure to provide a proper answer to the jurors' inquiry constituted an abuse of the trial judge's discretion and infected the trial's outcome with error.").

Error in this case is similar to that which was addressed in *State v. Smith,* 304 S.C. 129, 403 S.E.2d 162 (Ct.App.1991). In *Smith,* the defendant was prosecuted for murder. During the trial court's charge to the jury it instructed the jury on murder,

7. The State vigorously maintains, and we agree, that the element of intent was outlined with respect to second degree murder in the instructions as a whole. However, "[t]he [State's] argument that the court's main charge clearly included this element is unavailing because the court's erroneous [response] constitutes 'the last words heard by the jury from the court before the jury reached its verdict.'" *People v. Simpkins,* 174 A.D.2d 341, 571 N.Y.S.2d 1 (1991) (quoting *People v. Carnegie,* 74 A.D.2d 651, 425 N.Y.S.2d 39, 40 (1980)).

voluntary manslaughter and involuntary manslaughter. While the jury was deliberating, it sent the following question to the trial court: "With voluntary manslaughter, to have legal provocation, does a person need to be struck himself, or is it enough to see someone else being assaulted for there to be enough cause to act?" *Smith,* 403 S.E.2d at 163. The trial court responded to the question by merely restating the previous charge on voluntary manslaughter. The defendant was subsequently convicted of murder. On appeal the defendant argued that the trial court's response to the jury's question was error. The appellate court agreed and granted a new trial. In so doing, the appellate court made the following observations:

> The error of the trial judge is manifest and twofold. In the first place, he did not answer the question asked. Moreover, his response was misleading.
>
> . . . .
>
> Of course, we do not mean to imply that the trial judge intentionally failed to answer the question asked by the jury or that he intended to mislead the jury by his response. To the contrary, it appears that he made a conscientious effort to fairly and fully respond. His error resulted from how he went about responding. It is not always sufficient for a judge to simply open a charge book and read a generic statement of the law to a jury, no matter how correct that statement may be in the abstract. This is particularly true where, as here, the judge is called upon to answer a well-framed question following the initial charge. Quite often, the judge must tailor, mold and even sculpt the law in fashioning an answer to fit the question. In this respect, the judge must be an artist, not a mere technician.

*Smith,* 403 S.E.2d at 163–64.

In the instant case, the trial court's reading of its previous charge on second degree murder and voluntary manslaughter was not responsive to the jury's question and, as a consequence, the court committed error by failing to clarify the jury's misunderstanding of the law on the issues presented by the question. *See Commonwealth v. Frederick,* 327 Pa.Super. 199, 475 A.2d 754, 763 (1984)

("It is the duty of the court to clarify issues for the jury[.]").

■ **2. The error was plain.** We have determined that the trial court's response to the jury's last question was error. The issue to be addressed now is whether the error was plain. We have held that "[t]o be 'plain,' the error must be 'clear' or 'obvious.'" Syl. pt. 8, in part, *Miller,* 194 W.Va. 3, 459 S.E.2d 114. In *State v. Myers,* 204 W.Va. 449, 513 S.E.2d 676 (1998), we elaborated upon this element of the plain error doctrine as follows:

> Under plain error analysis, an error may be "plain" in two contexts. First, an error may be plain under existing law, which means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution. Second, an error may be plain because of a new legal principle that did not exist at the time of the prosecution, *i.e.,* the error was unclear at the time of trial; however, it becomes plain on appeal because the applicable law has been clarified.

Syl. pt. 6, *Myers,* 204 W.Va. 449, 513 S.E.2d 676.

The last question submitted by the jury stated, in effect, that "intent" was not an element of second degree murder. The State argued below and in this appeal that "intent to kill is not an element of the crime of second degree murder." This argument has no merit. Our cases have made clear that:

> Intent is an element of second degree murder. . . .
>
> A conviction for second degree murder cannot be sustained without proof beyond a reasonable doubt that the accused had the requisite criminal intent. In regard to second degree murder, the requisite criminal intent would be the intent to do great bodily harm, or a criminal intent aimed at life, or the intent to commit a specific felony, or the intent to commit an act involving all the wickedness of a felony.

*State v. Haddox,* 166 W.Va. 630, 632, 276 S.E.2d 788, 790 (1981) (rejecting State's argument that intent was not element of second degree murder). Therefore, the trial

court's failure to correct the jury's misunderstanding, by not specifically stating that "intent" was, in fact, an element of second degree murder, was plainly error under our existing law.

■■■■ 3. **The error affected substantial rights.** The next step in our analysis requires a determination of whether the error affected Mr. Davis' substantial rights. We have indicated that:

> To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice.

Syl. pt. 9, in part, *Miller,* 194 W.Va. 3, 459 S.E.2d 114. Moreover,

> [i]n determining whether the assigned plain error affected the "substantial rights" of a defendant, the defendant need not establish that in a trial without the error a reasonable jury would have acquitted; rather, the defendant need only demonstrate the jury verdict in his or her case was actually affected by the assigned but unobjected to error.

Syl. pt. 3, *State v. Marple,* 197 W.Va. 47, 475 S.E.2d 47, (1996).

■■■■ We have little difficulty in finding that the trial court's error affected Mr. Davis' substantial rights. We have made clear that "[t]he trial court must instruct the jury on all essential elements of the offenses charged, and the failure of the trial court to instruct the jury on the essential elements deprives the accused of his fundamental right to a fair trial, and constitutes reversible error." Syl., *State v. Miller,* 184 W.Va. 367, 400 S.E.2d 611 (1990). Further, "an incomplete instruction constitutes reversible error where the omission involves an element of the crime." *Id.,* 184 W.Va. at 368 n. 1, 400 S.E.2d at 612 n. 1. In this case, the trial court's response to the jury question "allowed the jury to convict [Mr. Davis] of [second] degree murder without necessarily finding that [Mr. Davis] had possessed [an] intent to kill the victim." *People v. Tenner,* 157 Ill.2d 341, 193 Ill.Dec. 105, 626 N.E.2d

138, 155 (1994). In essence, the trial court's response "relieved the [State] of its burden to prove [second degree murder] beyond a reasonable doubt. We cannot assume in fairness that the error made no difference in the jury's verdict." *Commonwealth v. Lennon,* 399 Mass. 443, 504 N.E.2d 1051, 1054 (1987).

■■■■ 4. **The error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.** We recognized in *State v. Marple,* 197 W.Va. 47, 475 S.E.2d 47 (1996), that:

> Once a defendant has established the first three requirements of [the plain error doctrine], we have the authority to correct the error, but we are not required to do so unless a fundamental miscarriage of justice has occurred. Otherwise, we will not reverse unless, in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Marple,* 197 W.Va. at 52, 475 S.E.2d at 52 (citations omitted). We are compelled to exercise our discretion in this case to find that the error seriously affected the fairness of the trial inasmuch as the jury convicted Mr. Davis of second degree murder upon the erroneous belief that this crime did not require an intent to kill. "In the final analysis, we conclude that in the circumstances [of this case] the [supplemental] charge did have the clear capacity to mislead the jury on an essential element of the offense, and to lead it to a result it otherwise might not have reached." *State v. Harmon,* 104 N.J. 189, 516 A.2d 1047, 1062 (1986). That is, the trial court's error "created a substantial likelihood of a miscarriage of justice. The conviction on th[e] indictment must be reversed for that reason." *Commonwealth v. Johnson,* 435 Mass. 113, 754 N.E.2d 685, 693–694 (2001).

## IV.

## CONCLUSION

Mr. Davis' conviction and sentence for second degree murder is reversed, and this case is remanded for further proceedings consistent with this opinion.[8]

Reversed and Remanded.

**8.** We note that "[u]pon retrial of a criminal de-

fendant, who has previously been convicted of

MAYNARD, Justice, dissenting:

(Filed June 8, 2007)

I would affirm the judgment of the trial court below because the defendant waived all appealable errors, and the alleged error of which he now complains to this Court simply does not rise to the level of plain error as it has been previously articulated by this Court.

The defendant challenges the jury instructions and supplemental jury instructions given by the trial judge alleging that they were ambiguous and failed to properly state all the elements of the offense of second-degree murder of which the defendant was convicted. The record before us shows that the defendant's trial counsel failed to raise any contemporaneous objections at trial to alleged errors concerning jury instructions and thus waived his client's right to raise these issues on appeal except by way of plain error or ineffective assistance of counsel. As noted by the majority, "in West Virginia criminal cases[,] the sole bases for attacking an unobjected to jury charge are plain error and/or ineffective assistance of counsel." *State v. Miller*, 194 W.Va. 3, 17 n. 23, 459 S.E.2d 114, 128 n. 23 (1995).[1]

The majority properly finds that the trial court's initial charge to the jury correctly stated the elements of second-degree murder because of the interchangeability of the terms "malice" and "intent" under West Virginia law. *See State v. Hatfield*, 169 W.Va. 191, 198, 286 S.E.2d 402, 407 (1982) (indicating that "in regard to first degree murder, the term 'malice' is often used as a substitute for 'specific intent to kill' or 'an intentional killing.' " (citations omitted)). Also, the ma-

jority correctly cites our precedent in *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), as the standard for reviewing jury instructions on appeal. Under the *Guthrie* standard,

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syllabus Point 4, *Guthrie, supra*. Unfortunately, the majority then abandons the *Guthrie* standard in favor of one in which this Court selectively dissects a trial court's jury instructions, placing special weight on the trial court's last words to the jury. In support of this "last words" standard, the majority resorts to reliance on an obscure New York case, *People v. Simpkins*, 174 A.D.2d 341, 571 N.Y.S.2d 1 (1991), that has been largely ignored by other courts and is completely at odds with *Guthrie*.

According to our well-settled law, "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and

second degree murder under a general homicide indictment, the court may not impose judgment for a more serious degree of homicide than that imposed at the original trial." Syl. Pt. 1, *State v. Young*, 173 W.Va. 1, 311 S.E.2d 118 (1983). "[W]ell established double jeopardy principles ... preclude a higher conviction on retrial where the defendant has been implicitly acquitted of such higher offense by his conviction of a lesser included offense at the original trial." *State ex rel. Young v. Morgan*, 173 W.Va. 452, 454, 317 S.E.2d 812, 813 (1984).

**1.** Claims of ineffective assistance of counsel are generally not ripe for appellate review on direct

appeal. *See State v. Triplett*, 187 W.Va. 760, 771, 421 S.E.2d 511, 522 (1992)("it is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal"). "In cases involving ineffective assistance on direct appeals, intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Miller*, 194 W.Va. at 14–15, 459 S.E.2d at 125–26 (footnote omitted).

(4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *Miller, supra.* Further,

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syllabus Point 7, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996). When this law is applied to the instant facts, it is clear that plain error is not present.

Certainly, the trial court could have better responded to the jury's inquiry by more fully addressing intent as an element of second-degree murder. I do not see, however, in light of the fact that the jury had already been properly instructed, how the trial court's failure to do so seriously affected the fairness, integrity, or public reputation of the judicial proceedings or caused a miscarriage of justice.

Regrettably, the majority's decision will have a greater negative impact than merely reversing the conviction of a defendant whom the jury fairly convicted of second-degree murder. I am convinced that the majority's retreat from our settled law in *Guthrie,* in favor of one in which this Court carefully parses with a fine tooth comb each word of a trial court's jury instruction, will have several negative consequences. First, it will needlessly complicate the task of trial judges as they labor over each individual word in a jury instruction, fearful of this Court's hyper-technical review. Second, it will make trial judges more reluctant to address specific inquiries from juries by restating jury instructions in less than their entirety. Final-

ly, it will result in more unnecessary reversals of valid criminal convictions.

Accordingly, for the reasons stated above, I dissent.

BENJAMIN, Justice, dissenting:

(Filed July 25, 2007)

Yet again, the Majority of this Court has chosen to usurp the discretion bestowed upon a trial court by our prior jurisprudence and to substitute its own judgment to obtain a predetermined result. In so doing, the Majority once more looks to foreign jurisdictions to create the supposed precedential support upon which it now relies. Not only is such foreign law inapplicable to the facts of this case, the Majority's result is plainly contrary to the established law of this State. Being unable to countenance this contrivance in our law, I dissent.

I agree with the dissenting opinion filed herein by Justice Maynard—the plain error doctrine was improperly invoked by the Majority in this matter. Of the West Virginia cases relied upon by the Majority in support of its invocation of the plain error doctrine, only three involved jury instructions and all involved a misstatement of law in the initial instructions. *See State v. Wyatt,* 198 W.Va. 530, 538–9, 482 S.E.2d 147, 155–6 (1996) (finding plain error in initial instruction which misstated the applicable law, including applicable elements of the offense charged, and that error was compounded upon re-reading of a portion of the instructions in response to jury inquiry); *State v. Miller,* 184 W.Va. 367, 400 S.E.2d 611 (1990)(finding failure to instruct jury as to all essential elements of offense charged constitutes reversible error); *State v. Barker,* 176 W.Va. 553, 557–8, 346 S.E.2d 344, 349–50 (1986) (*per curiam* ) (finding failure to instruct jury on essential elements of offense constituted plain error). This case does not involve a misstatement of law in the initial instructions provided to the jury. It is undisputed that the initial jury charge was both correct and proper.[1] Rather, the issue herein is a chal-

---

1. As the trial court's initial charge was both a correct statement of the law and was supported by the evidence, the trial court is afforded broad discretion in its wording and a challenge to the extent and character of a specific instruction is subject to an abuse of discretion standard. *See* Syl. Pt. 4, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

lenge to the trial court's response to a specific jury question, a response which did not constitute a complete recharge of the jury. As recognized in *Davis v. State*, 278 Ga.App. 628, 629 S.E.2d 537, 539 (2006), a case relied upon by the Majority herein, "[w]here a jury, which has been fully and properly charged, requests a recharge on a specific question, it is within the discretion of the trial court whether to recharge entirely or to recharge only on the specific question."

The Majority cites to no West Virginia case finding that a trial court abused its discretion in response to a jury question. Instead, the Majority looks to case law from foreign jurisdictions to support its decision in this matter.[2] Careful examination of the cases cited in the Majority opinion, however, fails to reveal the necessary support implied by the Majority for the instant decision. Indeed, several of the cases relied upon by the Majority involved inaccurate or misleading instructions not—as in the instant matter, the omission of a definition not legally required to be included in the instruction at issue.

The error addressed in *Commonwealth v. Lennon*, 399 Mass. 443, 504 N.E.2d 1051 (1987), involved a misstatement of law in the initial jury charge, one that omitted premeditation, an essential element of the crime charged, and relieved the Commonwealth of its duty to prove guilt beyond a reasonable doubt. In the instant matter, the initial jury charge was correct and fully advised the jury of the element of the crime and the State's burden of proof. Contrary to the Majority's suggestion, the trial court's response to the jury question did not relieve the State of its burden, requiring reversal as indicated by *Lennon*. Likewise, in *State v. Smith*, 304 S.C. 129, 403 S.E.2d 162 (Ct.App.1991), the trial court provided an inaccurate legal response to a jury question regarding the prov-

ocation legally sufficient to qualify defendant's action as voluntary manslaughter where the defense asserted was defense of another. In responding to the jury question, the trial court reinstructed the jury on voluntary manslaughter with the original instruction and gave two examples of provocation. *Smith*, 403 S.E.2d at 163. However, the examples given involved only assault upon oneself as provocation, not assault upon another, which under the applicable law could qualify as sufficient provocation. *Id.* The appellate court found that the trial court's response did not answer the jury's well-framed, specific question, and further found that the trial court's answer misled the jury as to the law because it "may very well have caused the jury to think that sufficient provocation could only arise out of an assault on the defendant himself." *Id.*

Similarly, the Majority's reliance upon *Brown v. State*, 610 So.2d 579 (Fla.Dist.Ct. App.1992), is misplaced because the response to the jury question in *Brown* was not in compliance with Florida law. In *Brown*, the trial court was presented with a jury request for re-instruction on the manslaughter and second-degree murder charges. *Brown*, 610 So.2d at 580. In response, the trial court read the definitions of both offenses, but omitted the definitions of excusable homicide and justifiable homicide from the manslaughter definition. *Id.* at 580–1. The court on appeal found such failure constituted reversible error because a unanimous Florida Supreme Court had previously held both definitions must be included within the definition of manslaughter to provide a complete manslaughter charge. *Id.* at 581.

Arguably similar to the issue presented herein is the case of *People v. Tenner*, 157 Ill.2d 341, 193 Ill.Dec. 105, 626 N.E.2d 138 (1994), which involved a trial court's response to a jury question as to whether intent was

---

**2.** Another case cited, though apparently not followed, by the Majority, *Smith v. State*, 265 Ga. App. 756, 596 S.E.2d 13, 15 (2004), expounds:

> As a general rule, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court. When the jury requests more instructions upon a particular phase of the case, the trial court is under a duty to instruct them in a plain, clear

manner so as to enlighten rather than confuse them. The court may respond to a jury's question by repeating charges which are legally sufficient and not misleading. But it is not necessarily error for the court to respond with a direct answer. The critical issue is whether the charge taken as a whole presents the issues in a way not likely to confuse a jury of average intelligence.

necessary to convict the defendant of attempted first degree murder. The trial court's response was to inform the jury that the attempt instruction applies "in conjunction with the other instructions." *Tenner*, 193 Ill.Dec. 105, 626 N.E.2d at 155. Because the first degree murder instruction previously provided to the jury included felony murder, an offense not requiring intent, the court on appeal found the trial court erred in its response to the jury question by allowing the jury to convict without "necessarily finding" the required element of intent necessary for an attempted first degree murder conviction. *Id. Tenner* must therefore be distinguished from this case because the trial court's response below did not provide the potential for conviction based upon an inapplicable legal theory.

Finally, I must take issue with the Majority's reliance upon *Smith v. United States*, 549 A.2d 1119 (D.C.Ct.App.1988), as such reliance implies we are dealing with a constitutional matter herein. We are not. At issue in *Smith v. United States* was an argument that the trial court's ambiguous response to a jury question regarding whether they may consider certain evidence relative to two "drug possession with intent to distribute" charges violated the defendant's Sixth Amendment right to a unanimous jury where the jury came back "immediately" after receiving the trial court's response. In response to the question as to whether certain evidence could be used to support the "possession" charges, the trial court stated that the evidence applied to the "distribution" charges and could also apply to the "possession" charges or whatever the jury deemed relevant. *Smith v. United States*, 549 A.2d at 1122. This response, however, was inconsistent with a prior answer to a jury question and with the State's theory of the case. *Id.* at 1123. In analyzing the issue presented, the court noted

> [t]he Sixth Amendment and Super.Ct.Crim.R. 31(a) require jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether that defendant is guilty of the crime charged. Consequently, when one charge encompasses separate incidents, the trial judge must instruct the

jury, that if a guilty verdict is returned, the jurors must be unanimous as to which incident or incidents they find the defendant guilty.

*Id.* at 1121 (internal citations and quotations omitted). The court in *Smith* found it clear that the jury was confused as to what evidence could be used to support the possession charges and that the verdict rendered immediately after the incorrect instruction constituted plain error with respect to the constitutional right that the jury be unanimous in determining the charges for which it found the defendant guilty. *Id.* at 1123. *Smith* is inapposite to the case before us because the instant case involves a definitional omission from a supplemental instruction, not an incorrect or misleading instruction regarding what evidence may be considered resulting in a potential Sixth Amendment violation.

In the instant matter, the trial court reinstructed the jury as to the elements of second degree murder and manslaughter, the offenses at issue in the jury question. The trial court did not omit any element of the offenses charged. Nor did the trial court misstate the law. Instead, the trial court has been faulted by the Appellant and the Majority for exercising its discretion to not further define terms setting forth the elements of the offenses charged, terms which were defined in the original charge.

The Majority recognizes that a challenge to a trial court's response to a jury question is reviewed under an abuse of discretion standard. However, instead of applying this standard, the Majority substitutes its judgment for the sound discretion of the trial court. While I may have preferred that the trial court included the definition of malice when responding to the jury's question regarding intent herein, I will not substitute my judgment for that of the trial court. The trial court exercised its recognized discretion in determining the appropriate response to the jury's question. Absent a response which misstates the law, clearly omits a required element of proof or is simply nonresponsive, the trial court is in the best position to determine the appropriate re-

sponse to a jury question during a trial. That is precisely why the proper standard of review in an appeal such as this is whether the trial court abused its discretion. It did not. Accordingly, because standards of review should never be disregarded because of a whim, caprice or the improper desire of this Court to take on the mantle (and concurrent responsibilities) of that of a trial court, I dissent.