# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 22-0210** (Putnam County 19-F-140)

**Leslie G.,**
**Defendant Below, Petitioner**

**FILED**

**November 6, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Leslie G.[1] intercepted e-mails and cell phone text messages of J. M., her youngest child's father, for several months in 2018. Following a 2021 jury trial in Putnam County, she was convicted of one count of interception of electronic communications, a felony under West Virginia Code § 62-1D-3 (2007). In this appeal, Petitioner asks for a new trial and claims that the trial court's response to a jury question during deliberations—where it defined the statutory term "tortious act"—was overly broad and prejudicial. Petitioner also argues that she has been denied her constitutional right to a complete trial transcript to adequately prepare an appeal because several sidebars conducted during jury selection were not transcribed. The State responds that a new trial is unnecessary because the trial court's response to the jury question fairly described the term, and she fails to make a showing of prejudice attributable to the missing portions of the transcript. For the reasons explained below, we agree with the State and affirm the conviction.[2]

## I. Factual and Procedural History

Petitioner and the victim, J. M., cohabitated and have a child together. By all accounts, their relationship was toxic; they obtained domestic violence protective orders against each other at various times. After J. M. and Petitioner were no longer living together, he suspected that Petitioner was accessing his e-mails and cell phone text messages and using this information for various reasons including interfering with his employment search. He reported the matter to law enforcement and in November 2019, a grand jury indicted Petitioner on one count of interception of electronic communications.

At the trial held in June 2021, J. M. testified that when he was living with Petitioner, he purchased a cell phone on her plan. And when he bought a tablet to go back to school, Petitioner

---

[1] Consistent with our long-standing practice, we use initials to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Petitioner is represented by counsel, Christopher W. Maidona and Zoe A. Shavers. The State is represented by Michael R. Williams, Principal Deputy Solicitor General.

set up an iCloud account using his tablet. J. M. said that he was not computer savvy at the time, but later learned that everything on his devices was shared to the iCloud account where Petitioner accessed it. J. M. said that he never gave Petitioner permission to access his personal information, even when they were together.

The lead investigator in the case, Trooper C. J. Eastridge with the West Virginia State Police, testified that he obtained a search warrant that led to the seizure of Petitioner's cell phone. He gave it to Roger Dale Mosley, a technician employed by the West Virginia State Police Digital Forensics Lab, who performed a data extraction on the cell phone. Trooper Eastridge determined that Petitioner accessed a variety of J. M.'s electronic communications including e-mails and text messages from January 2018 to October 2018, and then saved this information on her cell phone.

Trooper Eastridge testified that Petitioner intercepted J. M.'s e-mail conversations with his attorney, the child's guardian ad litem, the victim's advocate at the Putnam County Courthouse, and J. M.'s potential employers. Trooper Eastridge said that his investigation revealed that Petitioner created a fake e-mail account, using a different name, and e-mailed J. M.'s potential employers. He cited a specific example where Petitioner used this fake account to e-mail a potential employer about J. M.'s application to work as a gym manager. The subject line of this e-mail read "Applicant information [J. M.]", and the first three sentences of the e-mail read, "I worked with this individual at his previous employer, Planet Fitness. He was terminated . . . due to his own misconduct. He is applying to other facilities stating Planet Fitness asked him to do things he was uncomfortable with. This is simply untrue and being addressed." Trooper Eastridge said that this prospective employer later e-mailed J. M., and said, in part, "I sincerely apologize but we will not be able to conduct today's call. We will let you know once we're able to reschedule. Thank you." Trooper Eastridge said that he confirmed with J. M. that he was not called to work there.

Petitioner testified that before their baby was born, J. M. gave her permission to access everything on his cell phone and that he never withdrew that consent even after they broke up. Petitioner admitted that she continued to monitor his e-mails and text messages, claiming that "was the agreement." Petitioner also admitted that she collaborated with J. M.'s mother to create the fake e-mail account from which e-mails were sent to J. M.'s potential employers.

When instructing the jury on the elements of the crime, the trial court said, in part, that

[i]nterception of electronic communication occurs when any person intentionally intercepts, attempts to intercept or procures any other person to intercept any electronic communication or intentionally uses the contents of any intercepted electronic communication. . . . It is lawful for a person to intercept an electronic communication where one of the parties to the communication [has] given prior consent to the interception unless a communication is intercepted for the purpose of committing any criminal or tortious act in violation of the [C]onstitution or laws of the [U]nited [S]tates or the [C]onstitution o[r] the laws of this State. . . .

During deliberations, the jury sent the judge a note reading, "Can the court inform the jury the legal definition of a tortious act in WV?" Following the jury's question, the trial court

2

conferred with counsel about how to respond. Petitioner's counsel suggested the court say, "A tort is a civil wrong that causes a claimant to suffer loss or harm resulting in legal liability for the person who commits the tortious acts and for which the claimant suffers damages." The trial court rejected this proposed answer, reasoning "that definition injected a bunch of words that would almost have to be defined themselves again[.]" The trial court provided a typed answer to the jury which stated, "Tortious is an adjective of the word 'tort.' Tortious means constituting a tort. A tort is an act that brings harm to someone; an act that infringes on the rights of others."

The jury found Petitioner guilty. She filed a motion for a new trial under Rule 33 of the West Virginia Rules of Criminal Procedure, arguing that the trial court's definition of "tortious act" was overly broad and prejudicial. The trial court denied the motion.[3]

In February 2022, the trial court sentenced Petitioner to five years in the penitentiary and fined her $1,000. But it suspended the sentence and ordered that Petitioner be placed on home confinement for five years. This appeal followed.

## II. Standard of Review

We are called upon to consider two assignments of error that have specific standards of review that will be discussed below. But as a general matter, this Court has held that

> the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.[4]

With this deferential standard to guide us, we examine the issues presented in this appeal.

## III. Discussion

West Virginia Code § 62-1D-3(a)(1) and its federal counterpart, 18 U.S.C. § 2511(1) (2018), prohibit the intentional interception of any wire, oral, or electronic communications. While both statutes set forth the privilege of consent, prior consent is not a defense when "the

---

[3] Petitioner also filed a motion for judgment of acquittal under Rule 29 of the West Virginia Rules of Criminal Procedure. While neither posttrial motion is included in the appendix record before this Court, Petitioner argued at the hearing on the motions that she was entitled to an acquittal because there was insufficient evidence of interception of the electronic communications. She has abandoned that claim on appeal.

[4] *State v. Hughes*, 225 W. Va. 218, 223, 691 S.E.2d 813, 818 (2010) (citing Syl. Pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W. Va. 621, 225 S.E.2d 218 (1976)).

communication is *intercepted for the purpose of committing any criminal or tortious act* in violation of the constitution or laws of the United States or the constitution or laws of this State."[5]

There is no dispute that the trial court's jury instruction tracked the language of West Virginia Code § 62-1D-3. This case involves the narrow question of whether the trial court committed reversible error when it responded to the jury's request for the definition of tortious act by instructing it that, "Tortious is an adjective of the word 'tort.' Tortious means constituting a tort. A tort is an act that bring harm to someone; an act that infringes on the rights of others."

Petitioner argues that she is entitled to a new trial because the trial court's response to the jury's question was overly broad and prejudicial. She claims that this response erroneously included acts that may have been harmful or embarrassing without being tortious. The State responds that the trial court's definition fairly described the term in a way to not confuse the jury. And to the extent the trial court's response was error, the State says it would be harmless error because the remaining instruction properly advised the jury of the elements of the crime and the evidence establishing Petitioner's guilt was substantial. This Court has held that a "trial court has discretion in determining how best to respond to a jury question. We will review any such response for an abuse of discretion."[6]

In *State v. Davis*, this Court directed trial judges to respond to a question from a deliberating jury in a "plain, clear manner so as to enlighten rather than confuse them."[7] When responding to the jury's question in this case, the trial court's definition of "tortious" as "constituting a tort" is consistent with the definition found in *Black's Law Dictionary*.[8] And when defining tort as "an act that bring harm to someone; an act that infringes on the rights of others[,]" the trial court was careful to avoid a definition that used words that "would almost have to be defined themselves again," which is why it declined the definition offered by Petitioner's counsel. We conclude that the trial court's explanation of "tortious act" fairly explained the term to the jury within the context of West Virginia Code § 62-1D-3(e), without creating additional confusion.[9] We see no abuse of discretion.

---

[5] W. Va. Code § 61-1D-3(e) (emphasis added). The federal wiretap statute uses similar language. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is *intercepted for the purpose of committing any criminal or tortious act* in violation of the Constitution or laws of the United States or of any State[.]") (emphasis added).

[6] *State v. Davis*, 220 W. Va. 590, 593, 648 S.E.2d 354, 357 (2007).

[7] *Id*. at 595, 648 S.E.2d at 359 (quoting *Smith v. State*, 596 S.E.2d 13, 15 (Ga. 2004)).

[8] *Black's Law Dictionary* 1527 (8th ed. 2007).

[9] *See United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) ("[t]he carve-out within § 2511(2)(d), which renders inadmissible consented recordings made for the purpose of perpetrating

Petitioner also argues that she has been deprived of her constitutional right to a complete transcript and that she is prejudiced, per se, by the inability to identify potential issues within the missing portions of the record at trial. Petitioner cites fourteen instances where sidebars took place during jury selection that were not transcribed. She claims that because the transcript is incomplete, she is entitled to a new trial.[10] The State responds that enough information may be gleaned from the transcribed portions of jury selection to conclude there was no substantial issue discussed in any sidebar. And even though not transcribed, most of the sidebars resulted in the excusing of jurors either for cause or for hardship. While this Court has held that "all proceedings in the criminal trial are required to be reported," we have further held that "the failure to report all of the proceedings may not in all instances constitute reversible error."[11] "Omissions from a trial transcript warrant a new trial only if the missing portion of the transcript specifically prejudices a defendant's appeal."[12]

Applying that standard to this case, Petitioner fails to make a specific showing of prejudice attributable to the absence of that portion of the transcript. She cannot simply assert that the missing portions of jury selection *might* reveal the existence of error warranting reversal. Rather, she must identify possible appellate issues which, if meritorious, would otherwise warrant a new trial. The circumstances surrounding the missing portions of the transcript of the jury selection process in this case fall short of those in cases to which she cites, including *State v. Yates*,[13] where the transcript lacked nearly two hours of the trial, including crucial portions of the victim's testimony. Although serious errors can occur during jury selection, it would be pure conjecture for this Court to set aside Petitioner's conviction based on that possibility, especially when Petitioner did not allege any error arising from jury selection in her post-trial motions. The

---

'criminal' or 'tortious' acts, is to be construed narrowly. It is confined to instances where the recording party *intends to use the recording to harm or injure a recorded party*, such as to blackmail, threaten, or publicly embarrass the recorded party.") (emphasis added).

[10] *See* Syl. Pt. 2, *State x rel. Kisner v. Fox*, 165 W. Va. 123, 267 S.E.2d 451 (1980) ("The failure of the State to provide a transcript of a criminal proceeding for the purpose of appeal, absent extraordinary dereliction on the part of the State; will not result in the release of the defendant; however, the defendant will have the option of appealing on the basis of a reconstructed record or of receiving a new trial.").

[11] Syl. Pt. 5, in part, *State v. Bolling*, 162 W. Va. 103, 246 S.E.2d 631 (1978).

[12] Syl. Pt. 8, *State v. Graham*, 208 W. Va. 463, 541 S.E.2d 341 (2000).

[13] 821 S.E.2d 650, 652 (N.C. App. 2018).

possibility that a *Batson*-type error,[14] or anything resembling it, occurred without defense counsel making note of it is too unlikely to merit reversal.[15]

## IV. Conclusion

For the reasons set forth above, we affirm the Circuit Court of Putnam County's sentencing order entered February 22, 2022.

Affirmed.

**ISSUED:** November 6, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn, deeming herself disqualified, did not participate in this decision.
Judge Jeffrey D. Cramer, sitting by temporary assignment.

---

[14] *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding Equal Protection Clause forbids prosecutor from challenging potential jurors solely on account of their race).

[15] Petitioner's appellate attorney, Mr. Maidona, also represented her at trial.