IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

No. 12-0609

FILED

**October 28, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TONY T. GERLACH,
Petitioner Below, Petitioner

v.

DAVID BALLARD, WARDEN,
Respondent Below, Respondent

Appeal from the Circuit Court of Cabell County
Honorable Alfred E. Ferguson, Judge
Civil Action No. 04-C-99

AFFIRMED

Submitted: October 1, 2013
Filed: October 28, 2013

Dennis E. Kelley, Esq.
Huntington, West Virginia
and
Donald R. Jarrell, Esq.
Wayne, West Virginia
Attorneys for Petitioner

Patrick Morrisey, Esq.
Attorney General
Scott E. Johnson, Esq.
Senior Assistant Attorney General
Thomas W. Rodd, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

1.    "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard;  the underlying factual findings under a clearly erroneous standard;  and questions of law are subject to a *de novo* review."  Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

2.    "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  Syl. Pt. 1, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992).

3.    "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused.  It protects against a second prosecution for the same offense after conviction.  It also prohibits multiple punishments for the same offense."  Syl. Pt. 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977).

4. "A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. Pt. 7, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992).

5. "The purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Syl. Pt. 3, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996).

6. "In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses." Syl. Pt. 8, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992).

7. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars of the United States*, *Inc.*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

8.     "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith."  Syl. Pt. 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

9.     Separate convictions for second degree murder and death of a child by a parent, guardian or custodian by child abuse, although arising from the same act, do not constitute the same offense for purposes of the Double Jeopardy Clause of the West Virginia Constitution.

10.     "'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)."  Syl. Pt. 4, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992).

LOUGHRY, Justice:

The petitioner, Tony T. Gerlach, appeals the April 17, 2012, order of the Circuit Court of Cabell County denying his petition for a writ of habeas corpus. The petitioner was convicted on March 25, 1998, of one count of second degree murder and one count of death of a child by a parent, guardian or custodian. He was sentenced to forty years of imprisonment for each conviction, and it was ordered that the sentences be served consecutively. While the petitioner asserted several grounds for relief in his petition for a writ of habeas corpus,[1] his only assignment of error in this appeal concerns his claim that he has been punished twice for the same offense and, thus, placed in double jeopardy. Upon consideration of the parties' briefs, oral argument and submitted record, as well as the applicable statutory and case law, this Court finds no merit to the petitioner's argument and affirms the final order of the circuit court.

## I. Factual and Procedural Background

---

[1]In his habeas petition, the petitioner also asserted that he suffered unfair pre-trial publicity; that the prosecution suppressed helpful evidence; that the prosecution knowingly used perjured testimony and made unfairly prejudicial statements; and that his sentences were excessive. The circuit court found no merit to these claims.

On September 19, 1996, three-year-old A.C.[2] was left in the care of the petitioner, by her mother, S.C., while she attended evening classes at Marshall University, in Huntington, West Virginia.[3] Approximately one hour after S.C. left, the petitioner called 911 and reported that A.C. was choking and could not breathe. When emergency personnel arrived, A.C. had no pulse and was not breathing. A.C. was transported to the hospital where medical tests revealed subarachnoid hemorraghing through the inter-hemispheric fissure of her brain and cerebral edema or swelling. A.C. died two days later when life support was removed.

Subsequently, the petitioner was indicted for the offenses of murder and death of a child by a parent, guardian or custodian. At the petitioner's trial, the evidence showed that A.C. suffered at least five severe blows to the head and lost consciousness while she was in the petitioner's sole care. There was also evidence presented that A.C. had previously displayed fear of the petitioner and symptoms of abuse. Forensic evidence refuted the petitioner's claim that A.C. had choked.

---

[2]Because the victim was a child, we follow our customary practice for cases involving minors and sensitive facts and use initials to identify her and her mother. *See In re Cesar L.*, 221 W.Va. 249, 252 n.1, 654 S.E.2d 373, 376 n.1 (2007); *see also R.A.P.* 40(e)(1).

[3]The petitioner was S.C.'s boyfriend; the couple resided together.

As set forth above, the petitioner was convicted of the offenses of second degree murder and death of a child by a parent, guardian or custodian by child abuse. He filed an amended petition for a writ of habeas corpus on November 4, 2011. The petition was denied on April 17, 2012, and this appeal followed.

## II.  Standard of Review

The applicable standard of review for a decision of a circuit court granting or denying habeas corpus relief was set forth in syllabus point one of *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006), as follows:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

With this standard in mind, we consider the parties' arguments.

## II.  Discussion

The only issue in this appeal is whether the petitioner's convictions for second degree murder pursuant to West Virginia Code § 61-2-1 (2010)[4] and death of a child by a

---

[4]West Virginia Code § 61-2-1 states, in pertinent part:

> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual

parent, guardian or custodian pursuant to West Virginia Code § 61-8D-2a(a) (2010)[5] violate

the proscription against double jeopardy.  We have explained that

> [t]he Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

Syl. Pt. 1, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992).  Likewise,

> [t]he Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused.  It protects against a second prosecution for the same offense after conviction.  It also prohibits multiple punishments for the same offense.

Syl. Pt. 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977).

---

> assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four [§§ 60A-4-401 et seq.], chapter sixty-a of this code, is murder of the first degree.  All other murder is murder of the second degree.

[5]West Virginia Code § 61-8D-2a(a) provides:

> If any parent, guardian or custodian shall maliciously and intentionally inflict upon a child under his or her care, custody or control substantial physical pain, illness or any impairment of physical condition by other than accidental means, thereby causing the death of such child, then such parent, guardian or custodian shall be guilty of a felony.

4

The petitioner's argument is based on the prohibition against multiple punishments for the same offense. This Court has held that "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. Pt. 7, *Gill.* Legislative intent is the determinative factor because "[t]he purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Syl. Pt. 3, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996). If legislative intent cannot be determined, however, then it is necessary to proceed to application of the test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). In that regard, this Court stated in syllabus point eight of *Gill*:

> In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

*A. Legislative Intent*

5

In accordance with *Gill*, the starting point of our analysis is consideration of the language of the statutes at issue and their legislative history to ascertain legislative intent. In other words, we look to determine whether the Legislature intended for persons to be charged and convicted of both second degree murder and death of a child by a parent, guardian or custodian for a single act resulting in the death of a child.

The petitioner argues that if the Legislature had intended to permit convictions under both statutes, it would have clearly specified that these offenses were separate and distinct for purposes of punishment as it did with the offenses of sexual abuse and sexual abuse by a parent, guardian or custodian. *See* W.Va. Code § 61-8D-5 (2010) (stating that "[i]n addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection"). The petitioner also asserts that further evidence that the Legislature did not intend for an accused to be subject to multiple punishments for the death of a child by child abuse is the fact that the Legislature prescribed equal penalties under both statutes. Because the penalty for a conviction of second degree murder or a conviction of death of a child by a parent, guardian or custodian is a ten-to-forty year sentence,[6] the petitioner maintains that the offenses are equivalent alternatives to each

---

[6]West Virginia Code § 61-2-3 (2010) states: "Murder in the second degree shall be punished by a definite term of imprisonment in the penitentiary which is not less than ten nor more than forty years." West Virginia Code § 61-8D-2a(c) provides, in pertinent part: "Any person convicted of a felony described in subsection (a) or (b) of this section shall be punished by a definite term of imprisonment in the penitentiary which is not less than ten nor more than forty years."

other. Finally, the petitioner contends that the disparity in the double sentences imposed here compared to the "enhanced punishments" against parents, guardians and custodians elsewhere in the West Virginia Code shows that the Legislature did not intend for these charges to be imposed together and punished consecutively. In support of this argument, the petitioner points out that a person convicted of first degree sexual assault and sexual abuse by a parent, custodian or guardian is subject to sentences of imprisonment of fifteen-to-thirty-five years[7] and ten-to-twenty years,[8] respectively. Yet, in the petitioner's case, a person convicted of second degree murder and death of a child by a parent, guardian or custodian faces ten-to-forty years of imprisonment for each conviction, which results in punishment enhanced by a factor of one hundred percent. For these reasons, the petitioner contends that the Legislature clearly did not intend for a person found to have caused the death of a child by child abuse to be convicted of both second degree murder and the offense of death of a child by a parent, guardian or custodian.

In contrast, the State argues that the Legislature clearly intended to allow a person found to have caused the death of a child by child abuse to be convicted and sentenced under both West Virginia Code § 61-2-1 and West Virginia Code § 61-8D-2a. The

---

[7]*See* W.Va. Code § 61-8B-3(b) (2010) (providing fifteen-to-thirty-five year sentence for conviction of first-degree sexual assault).

[8]*See* W.Va. Code § 61-8D-5(a) (2010) (providing ten-to-twenty year sentence for conviction of sexual abuse by parent, guardian, custodian or person in position of trust).

State contends that if the Legislature had intended for death of a child by a parent, guardian or custodian by child abuse to constitute second degree murder, it would have so specified as it did with respect to W.Va. Code § 61-8D-2(a), which provides:

> If any parent, guardian or custodian shall maliciously and intentionally cause the death of a child under his or her care, custody or control by his or her failure or refusal to supply such child with necessary food, clothing, shelter or medical care, then such parent, guardian or custodian *shall be guilty of murder in the first degree.*

*Id.* (emphasis added). Because the Legislature did not make the same designation with regard to second degree murder and death of a child by a parent, guardian or custodian by child abuse, the State reasons that the Legislature created a separate offense with a separate punishment when it enacted West Virginia Code § 61-8D-2a(a). We agree.

"It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars of the United States*, *Inc.*, 147 W.Va. 645, 129 S.E.2d 921 (1963). Therefore, "our rules of statutory construction require us to give meaning to all provisions in a statutory scheme[.]" *Community Antenna Serv., Inc. v. Charter Communications VI, LLC*, 227 W.Va. 595, 604, 712 S.E.2d 504, 513 (2011). To that end, this Court has held:

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the

8

> statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syl. Pt. 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

The offense of murder has always been a part of our jurisprudence. Initially, "[a]t common law, murder was defined as the unlawful killing of another human being with 'malice aforethought.'" *State v. Guthrie,* 194 W.Va. 657, 673, 461 S.E.2d 163, 179 (1995). In 1868, the West Virginia Legislature adopted the Virginia murder statute. The language of that statute is identical to that of our present murder statute, West Virginia Code § 61-2-1. Obviously, a person who committed the act of child abuse and thereby caused the death of a child has always been subject to a murder conviction pursuant to West Virginia Code § 61-2-1. Despite that fact, the Legislature chose to enact West Virginia Code § 61-8D-2a(a) in 1994, and deem the offense specified therein a felony subject to a penalty of imprisonment of "not less then ten nor more forty years." W.Va. Code § 61-8D-2a(c). If the Legislature did not intend to create a separate offense with a separate punishment, there would have been no need to enact this statute. The statute would be meaningless and useless, especially given the fact that the penalty imposed is the same as that for second degree murder.

Contrary to the petitioner's assertion, we find the fact that the prescribed penalties under both statutes are identical indicates the Legislature intended the offenses to be separate and distinct. If the penalty for the offense of death of a child by a parent,

guardian or custodian was greater than the penalty for second degree murder, it might be arguably concluded that West Virginia Code § 61-8D-2a was enacted to impose a harsher penalty for the death of child caused by child abuse. In this instance, however, the penalty is the same. Therefore, with regard to the offense of death of a child by a parent, guardian or custodian by child abuse, we find that the Legislature, with the purpose of protecting the youngest and most vulnerable members of our society–children–created a separate offense with a separate punishment when it enacted West Virginia Code § 61-8D-2a. Accordingly, we now hold that separate convictions for second degree murder and death of a child by a parent, guardian or custodian by child abuse, although arising from the same act, do not constitute the same offense for purposes of the Double Jeopardy Clause of the West Virginia Constitution.

### B. The Blockburger Test

While we find the legislative intent in this instance is clear and that no double jeopardy violation has occurred, we nonetheless observe that the same result is reached utilizing the *Blockburger* test. In syllabus point four of *Gill*, we set forth the *Blockburger* test as follows:

> 'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

10

187 W.Va. at 138, 416 S.E.2d at 255. Application of the test in this instance shows that the offenses of second degree murder and death of a child by a parent, guardian or custodian by child abuse each require proof of an element that the other does not.

The petitioner has conceded that West Virginia Code § 61-8D-2a(a) contains an additional element not present in West Virginia Code § 61-2-1, which is that the person who caused the death was a parent, guardian or custodian.[9] The petitioner argues, however, that all the elements required to prove second degree murder are contained within the offense of death of a child by a parent, guardian or custodian by child abuse. The petitioner's argument is based upon his contention that second degree murder is established by proving an intent to harm, which he says is the same intent that must be proven to establish the offense of death of a child by a parent, guardian or custodian by child abuse.

In response, the State argues that an element of second degree murder is the intent to kill, and therefore, each offense does require proof of a fact that the other does not, satisfying the *Blockburger* test. In making this assertion, the State relies upon *State v. Hatfield*, 169 W.Va.191, 286 S.E.2d 402 (1982), wherein this Court stated:

> It is clear, however, that the intent to kill or malice is a required element of both first and second degree murder but the

---

[9]We note also that there are the additional elements that death must have been the result of child abuse and the victim must be a child.

11

distinguishing feature for first degree murder is the existence of premeditation and deliberation.

*Id.* at 198, 286 S.E.2d at 407-08.  At the same time, the State acknowledges that some of this Court's prior cases have indicated that intent to kill is not an element of second degree murder.  *See, e.g., State v. Hertzog*, 55 W.Va. 74, 80, 46 S.E. 792, 794 (1904) ("[T]he distinctive element in willful, deliberate, and premeditated murder, not in murder of the second degree, is the specific intention to take life[.]"); *State v. Dodds*, 54 W.Va. 289, 299, 46 S.E. 228, 232 (1903) ("Wherever, then in cases of deliberate homicide, there is a specific intention to take life, the offense, if consummated, is murder in the first degree; if there is not a specific intention to take life, it is murder in the second degree.").

In *Guthrie*, this Court acknowledged the inconsistency in this Court's prior cases discussing the distinction between first and second degree murder and was "compelled . . . to make the dichotomy meaningful by making some modifications to our homicide common law." *Id.* at 675, 461 S.E.2d at 181.   The confusion stemmed from attempts to explain the meaning of the terms deliberation and premeditation as they pertain to first degree murder.  Those terms are not defined by our murder statute.[10]  As we have explained, "W.Va.Code, 61-2-1, was not designed primarily to define the substantive elements of the particular types of first degree murder, but rather was enacted to categorize the common law crimes of murder for the purpose of setting degrees of punishment."  Syl. Pt. 5, *State v. Sims*,

---

[10]*See* note 4, *supra.*

12

162 W.Va. 212, 248 S.E.2d 834 (1978); *see also State v. Starkey*, 161 W.Va. 517, 523, 244

S.E.2d 219, 223 (1978) (recognizing that "our murder statute is not designed to cover all the

essential elements of murder"). As such, this Court has been repeatedly called upon to

articulate the difference between first and second degree murder. In making this distinction,

in some prior cases, premeditation became equated with the intent to kill.

To clarify the difference between the degrees of murder, Justice Cleckley,

writing on behalf of the Court, explained in *Guthrie* that

> [p]remeditation and deliberation should be defined in a more
> careful, but still general way to give juries both guidance and
> reasonable discretion. Although premeditation and deliberation
> are not measured by any particular period of time, there must be
> some period between the formation of the intent to kill and the
> actual killing, which indicates the killing is by prior calculation
> and design. As suggested by the dissenting opinion in *Green v.
> State*, 1 Tenn.Crim.App. 719, 735, 450 S.W.2d 27, 34 (1970):
> "True, it is not necessary to prove premeditation existed for any
> definite period of time. But it is necessary to prove that it did
> exist." This means there must be an opportunity for some
> reflection on the intention to kill after it is formed. The accused
> must kill purposely after contemplating the intent to kill.
> Although an elaborate plan or scheme to take life is not
> required, our *Schrader*'s[11] notion of instantaneous premeditation
> and momentary deliberation is not satisfactory for proof of first
> degree murder.

---

[11]*Guthrie* overruled *State v. Schrader*, 172 W.Va. 1, 302 S.E.2d 70 (1983), which indicated that the meaning of "premeditated" as used in the [murder] statute is essentially "knowing and intentional." 194 W.Va. at 664, 461 S.E.2d at170; syl. pt. 6.

*Id.* at 675, 461 S.E.2d at 181 (footnote added). Of importance to the case at bar is the fact that *Guthrie* made it clear that intent to kill is an element of second degree murder. In that regard, Justice Cleckley further explained:

> [T]here must be some evidence that the defendant considered and weighed his decision to kill in order for the State to establish premeditation and deliberation under our first degree murder statute. This is what is meant by a ruthless, cold-blooded, calculating killing. *Any other intentional killing, by its spontaneous and nonreflective nature, is second degree murder.*

*Id.* at 675-76, 461 S.E.2d at 181-82 (footnote omitted and emphasis added).

Therefore, pursuant to *Guthrie*, intent to kill is an element of second degree murder. Intent to kill, however, is not an element of the offense of death of a child by a parent, guardian or custodian as set forth in West Virginia Code § 61-8D-2a(a). Furthermore, as discussed above, the offense of death of a child by a parent, guardian or custodian by child abuse contains elements of proof not required to establish second degree murder. Therefore, the two offenses are separate and distinct pursuant to the *Blockberger* test.

## IV. Conclusion

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Cabell County entered on April 17, 2012, is affirmed.

Affirmed.

14