IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0207

_____

**FILED**
**June 12, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

HAYDEN DAMIAN DRAKES,
Petitioner

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Criminal Action No. 16-F-344

REVERSED AND REMANDED

_____

Submitted: February 18, 2020
Filed: June 12, 2020

Matthew Brummond, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
John M. Masslon II, Esq.
Assistant Solicitor General
Caleb A. Ellis, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mis[led] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion." Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

2. Murder in the second degree is the unlawful, intentional killing of another person with malice, but without deliberation and premeditation. To the extent that *State v. Morrison*, 49 W. Va. 210, 38 S.E.481 (1901), *State v. Haddox*, 166 W. Va. 630, 276 S.E.2d 788 (1981), and their progeny are inconsistent with our holding, they are expressly overruled.

3. "Gross provocation and heat of passion are not essential elements of voluntary manslaughter, and, therefore, they need not be proven by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing

i

feature of voluntary manslaughter." Syl. Pt. 3, *State v. McGuire*, 200 W. Va. 823, 490 S.E.2d 912 (1997).

**WORKMAN, Justice**:

The petitioner, Hayden Damian Drakes, was convicted by a jury on one count of second-degree murder. He appeals the February 26, 2018, order of the Circuit Court of Cabell County, West Virginia, denying his Motion to Set Aside the Verdict, and his Motion for Judgment of Acquittal Notwithstanding the Verdict, or, Alternatively, Motion for a New Trial, and sentencing him to a term of forty years in prison, with credit for time served, and no credit for home confinement. The petitioner argues that the circuit court erred in instructing the jury that it could convict him of second-degree murder if it found intent to kill *or to cause great bodily injury*, and in instructing the jury that provocation and heat of passion were elements of voluntary manslaughter. Upon careful review of the parties' brief and oral arguments, the appendix record, and the applicable law, we find the circuit court erred in its instructions to the jury for both second-degree murder and voluntary manslaughter. Therefore, we reverse the petitioner's conviction and remand the case to the circuit court for a new trial.

## I. Facts

Both parties agree that the facts are largely undisputed regarding an altercation between the petitioner and Brett Powell, the victim, on March 30, 2016, which led to the victim's death and to the petitioner being charged with second-degree murder. The evidence introduced at trial showed that on March 30, the petitioner and a group of friends went to Club Deception, a bar located in downtown Huntington, West Virginia, to celebrate the petitioner's birthday and the anniversary of two other members of the group, Joshua and Danielle Spurlock. The group went to the outdoor patio area of the bar. While

1

in this area, they were approached by the victim, Brett Powell, who was a stranger to the group. The victim approached the group, introduced himself as "Tim," and asked if anyone wanted to purchase illegal drugs. The members of the group declined and asked the victim to leave.

The victim left, but returned a few minutes later. This time, the victim asked Mrs. Spurlock, who was pregnant, and another member of the group, Liza Slone, if they wanted to purchase any drugs. Mr. Spurlock informed the victim that he was speaking to his wife, that she was pregnant, and that the victim needed to leave. Again the victim left, but then again he returned, after Mr. Spurlock had gone inside the bar to use the restroom. When one of his friends told him that the victim was back and had again approached his wife, Mr. Spurlock returned to the group and expressed his frustrations both to his wife and to the petitioner.

Thereafter, the victim, despite being told that Mrs. Spurlock was pregnant, came up to her, pushing a drink in her face, shoving it towards her mouth. Mr. Spurlock testified that he "smacked the cup out of . . . [the victim's] hand." Mr. Spurlock testified that he came "face-to-face" with the victim and told him he needed to leave. Mr. Spurlock testified that he was ready to fight the victim if the victim did not leave the bar. At this point, the petitioner stated to Mr. Spurlock that he was going "to try to play peacemaker and . . . just deescalate the situation" by speaking to the victim.

2

The petitioner found the victim in the patio area of the bar. He told the victim to leave the group alone, after which, in petitioner's recounting of events, although his intent was not to fight or hurt the victim, "[w]e exchanged words." The victim then "grabbed" the petitioner, whereupon the petitioner lost his temper and "just started hitting" the victim. The evidence introduced at trial, which included videos from the bar's security cameras, showed the petitioner punched the victim in the face—seven or eight times—until the victim fell to the ground. When the victim fell, the petitioner stopped hitting him and left the bar with his friends for another bar down the street.

Another patron in the bar, Danielle Hayes, came out on the patio after the incident. She noticed that the victim was having a seizure, so she turned him on his side. When the victim stopped breathing, she performed CPR, remaining with the victim until emergency personnel arrived. The victim later died. The medical examiner testified that the cause of the victim's death was blunt injuries to the head.

The petitioner was arrested in the early morning of the next day in connection with the assault. The petitioner agreed to be interviewed by Detective Shane Bills with the Huntington Police Department. Detective Bills testified that during the interview, the petitioner admitted to hitting the victim, but denied trying hurt him.

On August 17, 2016, the petitioner was indicted on one count of second-degree murder. The petitioner's two-day jury trial began on December 19, 2017. At the

3

close of all the evidence, the events giving rise to the two issues presently before the Court occurred during the instructional phase of the petitioner's trial. The first issue arose during the parties' discussion with the circuit court about the instructions to be given to the jury, when the State objected to the petitioner's proposed instruction on second-degree murder. The instruction, in relevant part, would have informed the jury that: "Murder in the second degree is the unlawful, intentional killing of another person with malice but without deliberation or premeditation." Conversely, the State's proposed instruction was as follows: "Murder of the Second Degree is committed feloniously, maliciously, but without deliberate or premeditated action and with the intent to kill *or to cause great bodily harm*."[1] (Emphasis added). In similar vein, the State also sought the following instruction, which was given by the Court:

> The Court further instructs the jury that a conviction for second degree murder cannot be sustained without proof beyond a reasonable doubt that the accused had the requisite criminal intent. In regard to second degree murder, *the requisite criminal intent would be the intent to do great bodily harm*, or a criminal intent aimed at life.

(Emphasis added). Even while agreeing to give the State's instruction, the circuit court commented that, "I don't like that[,]" explaining, "You are saying you can find him guilty of Second Degree Murder if there is intent to kill *or cause great bodily harm*." (Emphasis added). The petitioner again objected, stating "Murder requires specific intent to kill, Judge . . . ," and the circuit court agreed: "I have always felt that it did." The circuit court

---

[1] The circuit court did not give this specific proposed instruction.

4

stated to the assistant prosecutor, "If you want to give that, I will; but I will leave that up to you." Subsequently, in continuing the argument that intent to do great bodily harm is an element of second-degree murder, as the State continued to insist, the circuit court stated, "Okay. You all want it, you will get it; but you are going to have to lie with it." The circuit court specifically cautioned the State: "The only problem with these things [referring to instructions], they [referring to this Court] will reverse on instructions quicker than anything else. That is the only thing."

The second issue on appeal concerns the voluntary manslaughter instruction that was given to the jury. In this regard, the petitioner asked the circuit court to instruct the jury that "'Voluntary Manslaughter' is the unlawful and intentional killing of another without malice." The circuit court initially agreed to give the petitioner's instruction even though the State argued that its instruction was better because it contained the elements of sudden provocation and heat of passion. The circuit court stated, "It is intent to kill without malice, in my opinion. I think that is right." Despite the circuit court initially agreeing to give the petitioner's proposed instruction, the State pressed the circuit court to use its instruction, which included the elements of sudden provocation and heat of passion. The petitioner countered that these were not elements of the crime; if the jury found that the petitioner did not act with malice, "then they may think, well, there is sudden provocation [even] if there is no malice. . . . I think it is just pretty clear the jury has to believe there is no malice involved." The circuit court ultimately ruled that it would give the State's instruction on voluntary manslaughter: "[T]he Defendant . . . did feloniously, unlawfully

5

and intentionally, without premeditation, deliberation or malice, but upon sudden provocation and in the heat of passion kill . . . [the victim]."[2]

During the jury's deliberations, it sent the following message to the circuit court: "Please submit instructions with definitions of Involuntary Manslaughter, Voluntary Manslaughter, and Murder Two." The circuit court gave the jury the same instructions that it had previously read to them, but in writing. The jury convicted the petitioner of second-degree murder. After the circuit court considered the petitioner's post-trial motions, the petitioner was sentenced to the maximum term of forty years in prison.

## II. Standard of Review

Both assignments of error concern the instructions given to the jury. Our review of the jury instructions is governed by the following standard of review:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mis[led] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

---

[2] The jury was also instructed on involuntary manslaughter, but the petitioner raises no error regarding the involuntary manslaughter instruction.

6

Syl. Pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).  We have also stated that "if an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise *de novo* review."  *Id.* at 671, 461 S.E.2d at 177.  Finally, if, in connection with the legal sufficiency of the instructions, it is determined that the petitioner failed to object to one or more instruction regarding the legal sufficiency, our review would be under the plain error standard.  *Id.* n.13 (citing *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)).

### III. Discussion

### A.  Second-degree Murder Instruction

The first issue before this Court is whether the circuit court erred in instructing the jury that it could convict the petitioner of second-degree murder if it found intent to kill or to cause great bodily harm.  The petitioner argues that second-degree murder requires a finding of intent to kill, as we previously held in *Guthrie*, 194 W. Va. at 676, 461 S.E.2d at 182, and that "aberrant case law misled the State below[,]" and thus the circuit court, into error.  Succinctly put, by instructing the jury that it could convict the petitioner of second-degree murder if the petitioner merely intended to cause great bodily harm to the victim, the circuit court effectively removed intent to kill as a required element of the crime.  In its brief in opposition, the State argues that it has long been recognized that "intent to do great bodily harm is a sufficient level of criminal intent for a second

7

degree murder conviction[,]"[3] and that this Court has never overruled the common law

formation of the intent necessary to establish second-degree murder. *See State v. Davis*,

---

[3]We note at the outset that the State purposefully uses malice and intent interchangeably, even though it recognizes that there is a distinct difference in our jurisprudence:

> "[W]ith the explicit caveat that the State recognizes that malice includes more than the requisite criminal intent, because the relevant inquiry in this case is the level of intent required in the malice element of second degree murder, the State will use the terms "malice" and "intent" interchangeably throughout the . . . discussion."

Even though we recognize that malice and intent to kill have been used interchangeably at times, this Court has established that malice is a distinct element of second-degree murder, separate from intent. *See* Syl. Pt. 1, *State v. Bongalis*, 180 W. Va. 584, 378 S.E.2d 449 (1989) ("""Malice, express or implied, is an essential element of murder in the second degree, and if absent the homicide is of no higher grade than voluntary manslaughter." Syllabus Point 1, *State v. Galford*, 87 W.Va. 358, 105 S.E. 237 (1920).' Syllabus Point 2 of *State v. Clayton*, 166 W.Va. 782, 277 S.E.2d 619 (1981)"); *see also State ex rel. Combs v. Boles*, 151 W. Va. 194, 198, 151 S.E.2d 115, 118 (1966) (recognizing that malice is an essential element of both first- and second-degree murder); Syl. Pt. 1, *State v. Ponce*, 124 W. Va. 126, 19 S.E.2d 221 (1942) ("Malice is an indispensable element of murder in the second degree; and where, in a trial upon an indictment for murder, there is no evidence showing malice or from which it may be inferred, it is error to instruct the jury that it may find defendant guilty of murder in the second degree and a verdict of conviction based upon such an erroneous instruction will be set aside and a new trial awarded."). Thus, to the extent the State conflates the two terms, and relies upon cases in its brief wherein the Court was focused upon malice, rather than the intent element of second-degree murder, the State unnecessarily confuses the issue before the Court. In this regard, we have discussed the malice element needed to sustain a second-degree murder conviction in a number of cases. *See, e.g., State v. Bias*, 156 W. Va. 569, 575, 195 S.E.2d 626, 629 (1973) (noting in a sufficiency of the evidence challenge that "[o]rdinarily blows inflicted by one person on another with bare fists do not demonstrate[] the malice requisite to sustain a conviction of second degree murder. However, we have held that a protracted and continued beating with bare hands by a stronger person upon a weaker person can evince the malice necessary for a conviction of murder."); *State v. Weisengoff*, 85 W. Va. 271, 286-87, 101 S.E. 450, 457 (1919) (finding that an act "which would be apt to produce death or great bodily harm" would be sufficient to show malice); *see also State v. Burdette*, 135

8

220 W. Va. 590, 596, 648 S.E.2d 354, 360 (2007) (per curiam) (referring in dicta to intent

to do great bodily harm as meeting the intent element of second-degree murder).

Our examination of the elements of second-degree murder begins with the

common law. As Justice Cleckley, writing for the Court in *Guthrie*, noted in his thorough

analysis of murder generally:

> At common law, murder was defined as the unlawful killing of
> another human being with "malice aforethought." Because the
> common law definition of "malice aforethought" was
> extremely flexible, "it became over time an 'arbitrary symbol'
> used by trial judges to signify any of the number of mental
> states deemed sufficient to support liability for murder." John
> S. Baker, Jr., Daniel H. Benson, Robert Force, & B.J. George,
> Jr., *Hall's Criminal Law* 268–69 (5th ed. 1993). Nevertheless,
> most American jurisdictions maintained a law of murder built
> around common law classifications.

194 W. Va. at 673, 461 S.E.2d. at 179.

The West Virginia Legislature, however, following Pennsylvania's lead,[4]

began the departure from the common law by enacting what is currently known as West

Virginia Code § 61-2-1, codifying murder and dividing it into degrees. The original

---

W. Va. 312, 332, 63 S.E.2d 69, 81 (1950) (finding in a sufficiency of the evidence
challenge that evidence of a vicious, brutal, and continued assault, even after victim was
helpless, was sufficient for the jury to find malice and to sustain a first-degree murder
conviction). Because we agree with the petitioner that this case is not about the malice
element of second-degree murder, we address only the issue of intent in this opinion.

[4] *See Guthrie*, 194 W. Va. at 673 and n.20, 461 S.E.2d at 179 and n.20 ("Pertinent
to this case, the most significant departure from the common law came on April 22, 1794,
when the Pennsylvania Legislature enacted a statute dividing murder into degrees.").

9

codification of first- and second-degree murder in West Virginia provided: "Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, rape,[5] robbery or burglary, is murder of the first degree. *All other murder is murder of the second degree*." *See* 1 Kelly's W. Va. Rev'd Stat., Ch. 144, § 1 (1879) (footnote and emphasis added). [6] The most recent version of the statute, which was last amended in 1991, sets forth both first- and second-degree murder as follows:

> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four [§ 60A-4-401 et seq.], chapter sixty-a of this code, is murder of the first degree. *All other murder is murder of the second degree*.

W. Va. Code § 61-2-1 (2014) (emphasis added). [7]

---

[5] In 1987, the Legislature amended the statute by substituting "sexual assault" for "rape." W. Va. Code § 61-2-1 (1987).

[6] The original statute can be traced to its enactment in Virginia in 1849, remaining unchanged until it was amended in 1987. *See supra* note 5.

[7] The punishment for second-degree murder was "confinement in the penitentiary not less than five nor more than eighteen years." W. Va. Code § 61-2-3 (1923). This punishment remained the same until 1994, when the punishment for second-degree murder was increased to be "a definite term of imprisonment in the penitentiary which is not less than ten nor more than forty years." *Id*. (Supp. 1994).

10

Prior to and even for a significant period of time after the enactment of the foregoing first- and second-degree murder statute, intent to cause serious bodily harm remained a part of the common law elements that could be proven as part of a second-degree murder conviction. This is reflected in the Court's decision in *State v. Morrison*, 49 W. Va. 210, 38 S.E. 481 (1901). In *Morrison*, two friends had been drinking together when they began to argue, and as a result of the dispute, the defendant picked up a heavy stick and struck his friend with what turned out to be a fatal blow. *Id*. at 212, 38 S.E. at 482. The defendant was charged with murder, but the jury found him guilty of second-degree murder. *Id*. at 211-12, 38 S.E.2d at 482. In syllabus points two and three, the Court set forth the elements necessary to prove second-degree murder:

> The intent to do enormous or severe bodily harm with a deadly weapon, followed by homicide as the result of the execution of such intent, constitutes murder in the second degree, unless the act be done under such circumstances as render the killing excusable, or justifiable, or voluntary manslaughter.
>
> A specific intention to kill is not essential to murder in the second degree, but it is essential to murder in the first degree.[8]

---

[8] Interestingly, while the *Morrison* case has been cited by the Court as authority for the propositions set forth in these two syllabus points, neither syllabus point has been quoted by the Court in a majority criminal opinion since *Morrison* was decided in 1901, one hundred and nineteen years ago. Further, the last time the case was cited by the Court was in *State v. Shrader*, 172 W. Va. 1, 302 S.E.2d 70 (1982), which was a first-degree murder case that was overruled, in part, by *Guthrie* in regard to the period of time needed to deliberate and premediate—two elements necessary to establish first-degree murder. *See* Syl. Pt. 6, *Guthrie*, 194 W. Va. at 664, 461 S.E.2d at 170.

11

*Id.* at 211, 38 S.E. at 481 (footnote added); *see State v. Taylor*, 57 W. Va. 228, 240, 50 S.E. 247, 252 (1905) (adhering to the common law, stating in dicta that "[i]f there was a fixed purpose to do bodily harm, without killing, and death resulted, it was murder of the second degree.").

However, in the early 1980's, and more specifically, in *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982), the Court moved away from the common law notion that the intent to do great bodily harm was a requisite of second-degree murder, finding that second-degree murder required intent to kill. In *Hatfield*, the Court stated:

> We discussed at some length in *State v. Starkey, supra*, the term "malice" and concluded it is essentially "a form of criminal intent." 244 S.E.2d at 223. Thus, in regard to first degree murder, the term "malice" is often used as a *substitute* for "specific intent to kill" or "an intentional killing."[9] *E.g., State v. Ferguson*, W.Va., 270 S.E.2d 166, 170 (1980); *State ex rel. Combs v. Boles*, 151 W.Va. 194, 198, 151 S.E.2d 115, 118 (1966). *It is clear, however, that the intent to kill or malice is a required element of both first and second degree murder but the distinguishing feature for first degree murder is the existence of premeditation and deliberation.*

169 W. Va. at 198, 286 S.E.2d at 407-08 (footnote and emphasis added).

---

[9] *See supra* note 3.

We made it even clearer in our subsequent opinion in *Guthrie* that intent to

kill is a necessary element of second-degree murder, restating our prior holding in *Hatfield*

as follows:

> In *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), we made an effort to distinguish the degrees of murder by indicating that *the elements that separate first degree murder and second degree murder are deliberation and premeditation in addition to the formation of the specific intent to kill*. Deliberation and premeditation mean to reflect upon the intent to kill and make a deliberate choice to carry it out. Although no particular amount of time is required, there must be at least a sufficient period to permit the accused to actually consider in his or her mind the plan to kill. In this sense, murder in the first degree is a calculated killing as opposed to a spontaneous event.

194 W. Va. at 673-74, 461 S.E.2d at 179-80 (emphasis added).  While the Court's focus in

*Guthrie* was the premeditation and deliberation elements of first-degree murder, the Court

emphasized that intent to kill is an element of both first and second-degree murder:

> [T]here must be some evidence that the defendant considered and weighed his decision to kill in order for the State to establish premeditation and deliberation under our first degree murder statute. This is what is meant by a ruthless, cold-blooded, calculating killing. *Any other intentional killing*, by its spontaneous and nonreflective nature, is second degree murder.

*Id*. at 675-76, 461 S.E.2d at 181-82 (emphasis added) (footnote omitted).[10]

---

[10] The State relies upon a per curiam decision issued in *Davis* to support its argument that intent to do great bodily harm is sufficient for second-degree murder.  Specifically, in *Davis*, the Court, relying upon *State v. Haddox*, 166 W. Va. 630, 276 S.E.2d 788 (1981), which was also a per curiam decision, stated:

13

Most recently in *Gerlach v. Ballard*, 233 W. Va. 141, 756 S.E.2d 195 (2013), this Court again reaffirmed that intent to kill was an essential element of second-degree murder. In *Gerlach*, the issue before us was whether double jeopardy principles were violated when a person was convicted of both second-degree murder and death of a child by a parent, guardian or custodian. *Id*. at 144, 756 S.E.2d at 198. Ironically, in undertaking a *Blockburger*[11] analysis in *Gerlach*, which involved examining the elements of each crime, the defendant and the State in *Gerlach* took positions contrary to those taken by

> A conviction for second degree murder cannot be sustained without proof beyond a reasonable doubt that the accused had the requisite criminal intent. In regard to second degree murder, the requisite criminal intent would be the intent to do great bodily harm, or a criminal intent aimed at life, or the intent to commit a specific felony, or the intent to commit an act involving all the wickedness of a felony.
>
> *State v. Haddox*, 166 W.Va. 630, 632, 276 S.E.2d 788, 790 (1981) (rejecting State's argument that intent was not element of second degree murder).

*Davis*, 220 W. Va. at 596, 648 S.E.2d at 360 (*quoting Haddox*, 166 W. Va. at 632, 276 S.E.2d at 790). The State, however, ignores the fact that the foregoing language upon which it focuses was obiter dicta. *Id*. Further, notwithstanding that dicta, the Court in *Davis* reversed and remanded for a new trial because we found the jury instruction given regarding intent was misleading: "The last question submitted by the jury stated, in effect, that 'intent' was not an element of second degree murder. The State argued below and in this appeal that 'intent to kill is not an element of the crime of second degree murder.' This argument has no merit." *Id*. at 596-97, 648 S.E.2d at 360-61.

[11] *See Blockburger v. United States*, 284 U.S. 299, 204 (1932) ("'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'"); *accord* Syl. Pt. 4, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992) (setting forth *Blockburger* test).

14

their counterparts in the instant case. The defendant argued that a conviction for second-degree murder required the State to prove intent to *harm*, which the defendant argued was the same as the intent necessary to prove death of a child by a parent, guardian or custodian; the State, on the other hand, argued the intent element of second-degree murder was intent to *kill*. *Id*. at 147, 756 S.E.2d at 201.

We recognized in *Gerlach* that intent to kill has not always been an element of second-degree murder under our somewhat inconsistent jurisprudence. *Id*. at 148, 756 S.E.2d at 202 (citing *State v. Hertzog*, 55 W.Va. 74, 80, 46 S.E. 792, 794 (1904) ("[T]he distinctive element in willful, deliberate, and premeditated murder, not in murder of the second degree, is the specific intention to take life[.]"); *State v. Dodds*, 54 W.Va. 289, 299, 46 S.E. 228, 232 (1903) ("Wherever, then in cases of deliberate homicide, there is a specific intention to take life, the offense, if consummated, is murder in the first degree; if there is not a specific intention to take life, it is murder in the second degree.")). However, notwithstanding those earlier precedents, we reiterated that pursuant to *Guthrie*, intent to kill is an element of second-degree murder:

> Of importance to the case at bar is the fact that *Guthrie* made it clear that intent to kill is an element of second degree murder. In that regard, Justice Cleckley further explained:
>
> > [T]here must be some evidence that the defendant considered and weighed his decision to kill in order for the State to establish premeditation and deliberation under our first degree murder statute. This is what is meant by a ruthless, cold-blooded, calculating killing. *Any other intentional killing, by its spontaneous and nonreflective nature, is second degree murder*.

15

> *Id*. at 675-76, 461 S.E.2d at 181-82 (footnote omitted and emphasis added).
>
> *Therefore, pursuant to Guthrie, intent to kill is an element of second degree murder.*

*Gerlach*, 233 W. Va. at 130-41, 756 S.E.2d at 203 (quoting, in part, *Guthrie*, 194 W. Va. at 675-76, 461 S.E.2d at 181-82) (some emphasis added).

Applying this conclusion to the facts of the case before it, the Court determined that the elements of the second-degree murder and death of a child by a parent, guardian or custodian were different as "intent to kill is an element of second degree murder. Intent to kill, however, is not an element of the offense of death of a child by a parent, guardian or custodian as set forth in West Virginia Code § 61-8D-2a(a)." 233 W. Va. at 149, 756 S.E.2d at 203. Therefore, double jeopardy principles were not violated when the petitioner was convicted of both. *Id*.

Based upon the foregoing, it is apparent that a clear departure from the common law began with the *Hatfield* decision in 1982, wherein the Court recognized that the formation of a specific intent to kill was an element of second-degree murder. *See* 169 W. Va. at 198, 286 S.E.2d at 407-08; *accord Guthrie*, 194 W. Va. at 673-74, 461 S.E.2d at 179-80. Because the Court, however, has never recognized this departure by setting forth the elements necessary for second-degree murder in a syllabus point, we now clarify the departure that began almost forty years ago by holding that murder in the second degree is

16

the unlawful, intentional killing of another person with malice, but without deliberation and premeditation. [12] To the extent that *State v. Morrison*, 49 W. Va. 210, 38 S.E.481 (1901), *State v. Haddox*, 166 W. Va. 630, 276 S.E.2d 788 (1981),[13] and their progeny are inconsistent with our holding, they are expressly overruled.

The reasons this clarification as to the law governing second-degree murder is necessary are two-fold. First, without clarification, there will continue to be unnecessary confusion in the elements necessary to establish second-degree murder, resulting in instructional error such as occurred in the instant case. In this regard, we emphasize that our holding herein does not mean that second-degree murder cannot be proven on facts such as those present in the instant case; there are a myriad of factual scenarios upon which the State can prove a charge of second-degree murder, so long as the evidence is sufficient to establish the elements of the crime. Succinctly stated, once a jury is properly instructed as to the elements of second-degree murder, it then becomes "[t]he jury's sole function . . . to pass on whether a defendant is guilty as charged based on the evidence presented at

---

[12] Indeed, we have upheld convictions based on jury instructions with these elements. *See Delgado v. Ballard*, No. 14-1005, 2015 WL 2382105, at *3 (W. Va. May 18, 2015) (memorandum decision) (disagreeing with petitioner's argument that instruction for second-degree murder providing "'[m]urder in the second degree is the unlawful intentional killing of another person with malice but without deliberation and premeditation[]'" was incomplete); *State v. Foster*, 221 W. Va. 629, 640, 656 S.E.2d 74, 85 (2007) ("'Our review of the trial transcript indicates that the trial court correctly instructed the jury that "[m]urder in the second degree is the unlawful, intentional killing of another, with malice, but without deliberation or premeditation."'").

[13] *See supra* note 10 (discussing the per curiam decision in *Haddox*).

17

trial and the law as given by the jury instructions." *Guthrie*, 194 W. Va. at 678, 461 S.E.2d at 184. This Court makes no pronouncements as to the type or amount of evidence that may be sufficient to sustain a second-degree murder conviction; in all but the most unusual cases, and upon proper instruction of law, that decision is entirely one for the trier of fact.

Second, absent clarification that intent to kill is the required element of second-degree murder, voluntary manslaughter would sometimes be a lesser included offense of second-degree murder and sometimes not—a position espoused by the State in this case. As we held in syllabus point one of *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 433 S.E.2d 244 (1994),

> [t]he test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.[14]

---

[14] As for the offenses at issue in this case, we found in syllabus point six of *Guthrie*, 194 W. Va. at 664, 461 S.E.2d at 170, that first-degree murder is the malicious, intentional, deliberate, and premeditated killing of another. Second-degree murder is the unlawful, intentional killing of another person with malice, but without deliberation and premeditation. Voluntary manslaughter is the unlawful, intentional killing of another without malice. *See* Syl. Pt. 3, *State v. McGuire,* 200 W. Va. 823, 490 S.E.2d 912 (1997); *see also infra* Section III. B (discussing *McGuire* in greater detail). Involuntary manslaughter is an unlawful killing. *See* Syl. Pt. 7, *State v. Barker*, 128 W. Va. 744, 38 S.E.2d 346 (1946) ("The offense of involuntary manslaughter is committed when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another.").

18

(Footnote added). In *McGuire*, we stated that "[i]n West Virginia, there can be no doubt that we also have considered voluntary manslaughter as a lesser included offense of murder." 200 W. Va. at 834, 490 S.E.2d at 923. This recognition was predicated upon the intent to kill being necessary elements of both second-degree murder and voluntary manslaughter.

Despite our longstanding recognition that voluntary manslaughter is a lesser included offense of second-degree murder, the State invites the Court to allow the State to determine "whether voluntary manslaughter is a lesser-included offense [of second-degree murder]" based on whether it decides to proceed on a second-degree murder theory of intent to kill or intent to do great bodily harm. Under the State's logic, if it proceeded on the first theory, voluntary manslaughter would be a lesser included offense for the jury to consider; if it proceeded on the second theory, voluntary manslaughter would not be a lesser included offense and would not even be listed on the verdict form; and if it proceeded on alternative theories, as it did in this case, then it would be up to the jury to decide whether voluntary manslaughter would be a lesser included offense—and the verdict form would necessarily be a complicated maze of options. We find the State's suggested approach is in direct contravention of our existing law, is so complex as to be incapable of application, and is therefore untenable.

19

Accordingly, because the circuit court erred in instructing the jury that it could convict the petitioner of second degree murder if it found intent to kill *or to cause great bodily injury*, we reverse and remand the case for a new trial.

## B. Involuntary Manslaughter

The petitioner next argues that the circuit court erred in instructing the jury that it could not convict him of voluntary manslaughter as a lesser included offense of second-degree murder without proof of sudden provocation and heat of passion.[15] The petitioner contends that at the same time the circuit court made it easier for the State to prove second-degree murder, it made it more difficult for the jury to consider voluntary manslaughter by adding the elements of sudden provocation and heat of passion. We agree.

The Court expressly held in syllabus point three of *McGuire* that "[*g]ross provocation and heat of passion are not essential elements of voluntary manslaughter*, and, therefore, they need not be proven by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary

---

[15] We disagree with the State's argument that this assigned error was not preserved by the petitioner below. Even assuming, arguendo, that it was not properly preserved, the Court could review it under the plain error doctrine. *See* W. Va. Rule of Crim. P. 30 ("No party may assign as error the giving or the refusal to give an instruction or the giving of any portion of the charge unless that party objects thereto before the arguments to the jury are begun, stating distinctly the matter to which that party objects and the grounds of the objection; but the court or any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection.").

manslaughter." 200 W. Va. at 825, 490 S.E.2d at 914, Syl. Pt. 3 (emphasis added).[16] Thus, to the extent that the jury was instructed that voluntary manslaughter required proof that the petitioner killed the victim "unlawfully and intentionally, without premeditation, deliberation, or malice, *but upon sudden provocation and in the heat of passion*[,]" the instruction contained elements that were not essential to a conviction for voluntary manslaughter. (Emphasis added). The error in the instruction given by the circuit court is in direct contravention to the Court's holding in *McGuire*. This instructional error also warrants a reversal and remand for a new trial.

## V.  Conclusion

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed, and this case is remanded for a new trial.

Reversed and remanded.

---

[16] The State concedes in its brief that sudden provocation and heat of passion are not elements of voluntary manslaughter under West Virginia law.  But the State argues that the inclusion of those elements *adds* to the State's burden and is therefore harmless to the petitioner.  We disagree.